ESTATE OF HETTY B. LEVY, DECEASED, MIRIAM MAYER AND MAURICE M. FIERMAN, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 19635. Promulgated October 30, 1951.

*Harry T. Devine, Esq.*, for the petitioner.
*W. Morgan Hunter, Esq.*, for the respondent.

730

OPINION.

ARUNDELL, *Judge:* In 1945 the petitioner's decedent sold 96,487 shares of stock of Stern & Company, which she had acquired by way of gifts from her husband, and thereby realized an admitted gain. The parties differ as to the amount of gain, and the solution of this difference is the ultimate question that we are to decide.

The Internal Revenue Code specifies with considerable particularity the several elements that are to be taken into consideration in the determination of the amount of, and the recognition of, gain or loss. Section 111 (a), which deals with the computation of gain or loss, provides that the gain from the sale of property shall be the excess of the amount realized from the sale "* * * over the adjusted basis provided in section 113 (b) for determining gain * * *." Here we know the "amount realized" and we need not be concerned with the definition of that element in subsection (b) of section 111.

The other element in the computation formula of section 111 (a) is the "adjusted basis * * * for determining gain." Section 113 (b) provides that the adjusted basis "shall be the basis determined under subsection (a), adjusted as hereinafter provided." We can take a short cut through subsection (a) as the parties agree that the unadjusted basis provided for therein is the basis in the hands of the donor of the stock. This is in accordance with decisions. *Helene V. B. Worlitzer*, 29 B. T. A. 658, affd. 81 F. 2d 928; *Edward J. and Josephine McCormack*, 25 B. T. A. 497. The amount of the donor's basis is stipulated. The adjustments permitted by subsection (b) of section 113 are contained in a number of paragraphs and subparagraphs thereunder. Paragraph (1) permits adjustment for "expenditures * * * properly chargeable to capital account * * *." It is upon this paragraph that the petitioner relies in its claim that the amount of Federal estate tax paid by the decedent in 1946 should be added to the basis of stock.

While taxes of a donor or transferor of property which the recipient is required to pay in order to retain the property may be capital expenditures under some circumstances, we conclude that under the facts in this case the estate tax paid in 1946 by the decedent cannot be classified as being an expenditure of that nature. Internal Revenue Code section 827 (a) imposes a lien upon the gross estate and section 827 (b) imposes a liability for the tax against spouses, trans-

ferees, etc., who receive property included in the gross estate. Section 827 (b) further provides that in the case of property which has been sold for an adequate and full consideration, such property "shall be divested of the lien provided in section 827 (a) and a like lien shall attach to all the property of such spouse, transferee * * *." It follows from the fact that prior to 1946 the decedent had sold the property here involved no lien attached thereto, and any payment that she made in 1946 was not for the protection and preservation of any rights in that property, as in cases like *Morgan Jones Estate*, 43 B. T. A. 691, affd. 127 F. 2d 231, where the cost of removing a cloud on the title to property then owned by the taxpayer was held to be a capital expenditure. Perhaps the payment that she made was necessary to protect other property of the decedent from the statutory lien, but we fail to see how the payment could affect the particular property—the shares of stock—which the decedent did not own at the time of payment.

Moreover, we think that section 113 (b) (1) (A) is not designed to allow adjustments to the basis of property for events that occur after the year of a completed and closed transaction whereby a taxpayer finally disposes of the property. There is nothing in section 113 to support any such post-sale adjustments. The allowance of such adjustments would serve to keep a gain or loss transaction open indefinitely, and would be in contravention of the requirement of determining income taxes upon the net results of annual accounting periods. See *Burnet* v. *Sanford & Brooks Co.*, 282 U. S. 359, *Security Flour Mills Co.* v. *Commissioner*, 321 U. S. 281. As we have said above, the ultimate question is the determination of the amount of gain realized on the sale in 1945. That is to be determined by the results of transactions in that year, and the determination of the amount realized in that year cannot be affected by events occurring in a subsequent year in the absence of statutory authority.

A proceeding such as we have here is similar to a stockholder-transferee proceeding in which the transferee of property is required, in a year subsequent to the receipt of property, to discharge taxes imposed on his transferor. In such transferee cases, the amount of gain realized by stockholders in the year of distribution is not reduced by reason of the subsequent discharge of corporate taxes by the stockholders. In *Roberta Pittman*, 14 T. C. 449, a distributee-stockholder sought to reduce the gain realized on a distribution in liquidation in 1945 by the amount of corporate income tax for which she was liable as transferee and which she paid in 1947. We held that no deduction was permissible and said in part:

If the petitioner's contention, that the capital gain should be adjusted, were to be followed, the result would be to hold in abeyance the final determination of the

capital gain on a corporate dissolution until the final corporate income tax had been paid. This would place an unwarranted burden on the tax collection process.

To the same effect is the *Estate of Henry E. Mills*, 4 T. C. 820. In the *Pittman* case, as in similar cases, it was held that the amount so paid by the transferee was deductible as an ordinary loss in the year of payment. See *Stanley Switlik*, 13 T. C. 121, affd. 184 F. 2d 299.

Both parties refer to the Pennsylvania Apportionment Act of 1937. As we read that enactment, it merely authorizes the executor to recover from a distributee of an estate an amount of tax in the proportion that the interest or benefit of the distributee bears to the total value received by all such persons. That enactment does not fix any liability under the Federal taxing statutes but, more to the point, it does not purport to affect either the amount of gain or to require an adjustment of basis.

The petitioner relies on the case of *Irene C. Moffett*, 14 T. C. 445, in which we sustained the taxpayer in allowing her to add to the cost of annuity contracts, purchased by her deceased husband, the amount of estate tax which resulted from including those annuity contracts in the husband's estate. We held that such additional cost should be amortized over the period of the life expectancy of the taxpayer. The United States Court of Appeals for the Second Circuit, in its decision on appeal by both parties in the *Moffett* case, held as we did on this point, namely, that the amount of estate tax paid was a part of the cost of annuities, but further held that such was recoverable only under the provisions of Code section 22 (b) (2) (A), 191 F. 2d 149. The *Moffett* case dealt with a year in which the taxpayer realized income from the annuity contracts and in which same year she paid the estate tax. In neither Court was any decision rendered as to the effect of an estate tax payment made after the taxable year, although the findings of fact disclose that such payment was made. Consequently, the *Moffett* case does not support the petitioner's view that events that occur subsequent to the taxable year should be taken into account in determining income for that year.

Counsel for the respondent argues that Mrs. Levy was not liable under the Pennsylvania Apportionment Act for any of the tax on the estate of her husband, and also suggests that an erroneous formula was adopted in the computation of the amount that she paid as her share of the estate tax. In view of the conclusion that we have reached on the principal issue, it is unnecessary to decide these matters.

We conclude and hold that the basis of stock sold in 1945 may not be adjusted by reason of the payment of estate tax in 1946.

Reviewed by the Court.

*Decision will be entered for the respondent.*