JULES S. BACHE TRUST FOR HAZEL B. BECKMAN U/D DATED JUNE 1, 1921, CLIFFORD W. MICHEL, C. FRANK REAVIS AND WILLIAM B. FRANKE, SURVIVING AND SUCCESSOR TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

JULES S. BACHE TRUST FOR KATHRYN B. MILLER U/D DATED DECEMBER 15, 1927, GILBERT MILLER, CLIFFORD W. MICHEL AND PAUL FELIX WARBURG, SURVIVING AND SUCCESSOR TRUSTEES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 49908, 50063. Filed August 31, 1955.

*Peter J. Repetti, Esq.*, and *Gerald Silbert, Esq.*, for the petitioners. *Clay C. Holmes, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* These consolidated proceedings involve deficiencies in income tax for 1948 determined by the respondent against the Jules S. Bache Trust for Hazel B. Beckman and the Jules S. Bache Trust for Kathryn B. Miller, in the respective amounts of $35,055.43 and $30,510.13.

The sole issue is whether estate taxes paid by the petitioner trusts on the estate of Jules S. Bache, in compromise of the respondent's determination that the corpora of such trusts were gifts in contempla-

tion of death, were properly chargeable to their capital accounts and, hence, proper additions to the bases of assets held by them, within the meaning of section 113 (b) (1) (A) of the 1939 Code.[1]

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Jules S. Bache established a trust for his daughter Hazel B. Beckman (hereinafter referred to as the Beckman trust) on June 1, 1921. Clifford W. Michel, C. Frank Reavis, and William B. Franke are the surviving and successor trustees. On December 15, 1927, Bache established a trust for his daughter Kathryn B. Miller (hereinafter referred to as the Miller trust). Gilbert Miller, Clifford W. Michel, and Paul Felix Warburg are the surviving and successor trustees. At the time of Bache's death on March 28, 1944, both trusts were irrevocable. The trusts reported their income on the calendar year basis and filed returns for the year in issue with the collector of internal revenue for the second district of New York.

At the beginning of the year in issue, the sole assets of the Beckman trust consisted of 18,028 shares of stock of the Wenonah Development Company, of which 3,894 shares were class A stock and 14,134 shares were class B stock. At the beginning of the year in issue, the sole assets of the Miller trust were a like number of shares which were similarly divided between class A and class B stock. Wenonah Development Company is a personal holding company whose assets consist largely of securities of other corporations.

The executors of Bache's estate in reporting the value of such estate for tax purposes did not include the shares of stock held by the two trusts. By a deficiency letter dated April 6, 1948, the respondent included in Bache's taxable estate substantially all transfers made by him during his lifetime, including the assets of the two trusts. He thus included in Bache's estate the assets held by the Beckman trust at a value of $2,854,192.96, on the grounds that the transfer of such assets by Bache to the trust were essentially testamentary in character and, hence, includible in the valuation of his estate under section 811 (c) of the 1939 Code. He also included in Bache's estate assets of the Miller trust having the same value as those of the Beckman trust. By virtue of the respondent's inclusion of the assets of the two trusts in Bache's estate and because his will did not otherwise

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(b) ADJUSTED BASIS.—The adjusted basis for determining the gain or loss from the sale or other disposition of property, whenever acquired, shall be the basis determined under subsection (a), adjusted as hereinafter provided.

(1) GENERAL RULE.—Proper adjustment in respect of the property shall in all cases be made—

(A) For expenditures, receipts, losses, or other items, properly chargeable to capital account, but no such adjustment shall be made for taxes or other carrying charges, or for expenditures described in section 23(bb), for which deductions have been taken by the taxpayer in determining net income for the taxable year or prior taxable years;

24 T. C.

provide, they each became contingently liable for estate taxes in the approximate amount of $1,900,000, under section 124 of the New York Decedent Estate Law and section 827 (b) of the 1939 Code if the respondent's determinations were ultimately upheld.

In June 1948, the two trusts and the executors of Bache's estate agreed with the respondent on a compromise of the additional estate taxes determined by him. On July 23, 1948, the Beckman trust paid Federal estate taxes on Bache's estate in the amount of $509,428.41; and on that date, the Miller trust paid Federal estate taxes of $475,-243.71. The two trusts, by virtue of the compromise with respondent, became liable for additional New York estate taxes on Bache's estate. On September 23, the Beckman trust paid such additional taxes in the amount of $132,663.89; and, on the same day, the Miller trust paid such additional taxes in the amount of $123,761.55.

On or about July 29, 1948, but as of July 24, 1948, the Beckman trust sold 3,085 shares of Wenonah Development Company stock for $509,-423.95. On or about October 6, 1948, but as of September 30, 1948, it sold an additional 852 shares of such stock for $132,753.49.

On or about August 9, 1948, but as of July 24, 1948, the Miller trust sold 2,878 shares of Wenonah Development Company stock for $475,242.18. On or about October 6, 1948, but as of September 30, 1948, it sold an additional 795 shares of such stock for $123,872.10.

In determining the gain realized on the sales of stock, the trusts added to their bases that part of the Federal and New York estate taxes paid by them on the Bache estate which was allocable to the number of shares sold. The respondent determined that the estate taxes paid by the trusts were not proper additions to the bases of the stock sold by them under the provisions of sections 23 (c) (1) (D)[2] and 113 (b) (1) (A) of the 1939 Code and determined the deficiencies here in issue.

The petitioner trusts brought these proceedings on the grounds that the estate taxes paid by them were expenditures to protect and preserve their property and, hence, were proper charges to their capital accounts within the meaning of section 113 (b) (1) (A). In support of their argument, the petitioners cite *Irene C. Moffett*, 14 T. C. 445 (1950), reversed in part 191 F. 2d 149 (C. A. 2, 1951), and *Estate of Hetty B. Levy*, 17 T. C. 728 (1951).

In the *Moffett* case the taxpayer's husband had purchased joint and survivorship annuities at a cost of $730,000. The taxpayer's husband thereafter died and the respondent determined the value of such

[2] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:
(c) TAXES GENERALLY.—
(1) ALLOWANCE IN GENERAL.—Taxes paid or accrued within the taxable year, except—
(D) estate, inheritance, legacy, succession, and gift taxes:

annuities was includible in his gross estate. The taxpayer compromised the asserted liability against her by payment of $78,004 of additional estate taxes on her husband's estate. She also paid additional State inheritance taxes. We held that the payment which the taxpayer made was "for the protection and preservation of her rights as annuitant, and constitutes a capital expenditure." We held further that such capital cost could be amortized over her remaining life expectancy. The Court of Appeals for the Second Circuit held that the tax payment which the taxpayer made was, in effect, a purchase of annuity contracts to the extent of the payment and that the amounts received by her under the annuity contracts were not tax-free returns of capital except as provided in section 22 (b) (2) (A) of the 1939 Code.

In the *Levy* case, the taxpayer received stock from her husband as a gift. He later died. She sold the stock and realized a gain. The following year the respondent determined that the stock was a gift by taxpayer's husband in contemplation of death, and that its value was includible in his gross estate. The taxpayer compromised an additional deficiency determined against the estate by payment of $53,978.83 of additional estate taxes. She then sought to readjust the basis of the stock sold the previous year by adding to such basis the amount of additional estate taxes paid by her. We held that the addition of such tax payments was improper because the transactions occurred in 2 different taxable years. In the course of our opinion, we stated at page 730:

> While taxes of a donor or transferor of property which the recipient is required to pay in order to retain the property may be capital expenditures under some circumstances, we conclude that under the facts in this case the estate tax paid in 1946 by the decedent cannot be classified as being an expenditure of that nature. * * *

On the basis of our holding in the *Moffett* case and our above-mentioned statement in the *Levy* case, the petitioner trusts argue here that had the respondent been successful in sustaining his determination that their entire corpora were includible in Bache's estate as gifts made in contemplation of death, they would have lost more than two-thirds of their assets because of their liability to pay approximately $1,900,000 each in satisfaction of additional estate taxes. They argue, further, that the compromise payments which they made were to preserve and to protect their property, that they are inter vivos trusts established 23 and 17 years, respectively, prior to the decedent's death, and, finally, that such payments were therefore properly chargeable to their capital accounts.

The respondent, on the other hand, cites our holding in *Marion A. Burt Beck*, 15 T. C. 642 (1950), affd. 194 F. 2d 537 (C. A. 2, 1952), certiorari denied 344 U. S. 821 (1952), in support of his determination

that the taxes paid by the trusts were not proper additions to the bases of the stock sold by them in 1948. In the *Beck* case, the taxpayer in compromise of a dispute with her father's estate acquired certain iron ore lands. She agreed to pay the proportionate share of the Federal and State inheritance taxes on the assets transferred to her. She claimed that the taxes so paid were proper additions to the basis of the iron ore land in computing the depletion allowance thereon. We rejected her argument and held that the basis for depletion was the same as that for determining gain upon the sale of property. We said that the basis for determining gain on the sale of inherited property was the fair market value when it was acquired and not the petitioner's out-of-pocket costs added to such market value. We agree with the respondent that our holding in the *Beck* case is controlling here, and that the *Moffett* and *Levy* cases are inapplicable.

Stripped of immaterial factual dissimilarities with the *Beck* case, and irrelevant arguments to the effect that the trusts here were inter vivos transfers of property, the essential question is this: Can the transferee of a decedent's property pay his transferee share of a compromised estate tax deficiency, for which share he is admittedly liable under State and Federal law, and recoup a part of such tax by adding the amount thereof to the basis of the property transferred to him; subsequently sell the property; and compute the gain thereon by using the increased basis. As we pointed out in *Marion A. Burt Beck*, *supra*, page 664:

If estate taxes, paid proportionately by agreement between the recipients of legacies, were considered to be subject to "exhaustion allowances" then as to every such case the estate tax provisions of the law would come to naught for the original payments of those taxes would be recovered by the taxpayer by deductions over the years and the net gain in revenue to the government from the estate tax would be nil.

We note that in the *Beck* case the amount of estate taxes paid could have been recouped in full if the taxpayer had prevailed there. Here, on the other hand, only a part of the estate taxes could be recouped by the trusts by way of adding such taxes to the bases of their assets which they subsequently sold at a gain. However, we do not regard the fact that the amount of the taxes in the *Beck* case could have been recouped in full, while here only in part, to be a distinction of any importance because the basic theory in both cases is the same.

The petitioner trusts admit their liability for the amount of estate taxes paid under the compromise agreement with the respondent. Hence, their payment of such taxes was no different than the payment of such taxes by any legatee of the estate. Thus, the fact that the trusts were established many years prior to Bache's death is immaterial to the question before us.

Pursued to its logical conclusion the petitioners' argument would mean that the administrator or executor of an estate could distribute the decedent's property to the legatees or beneficiaries, who, in turn, might compromise or even pay in full the estate tax liability determined by the Commissioner. The legatees would then add the amount of the tax paid by them to the bases of the assets received from the estate and would determine gain upon the subsequent sale of such assets on the increased basis; thus, recouping a large part of the estate taxes paid if the assets were sold at a price equal to or above the increased basis. Hence, a holding in the petitioners' behalf here would, in effect, eliminate a large part of the estate tax as an effective revenue-raising measure. We think that decision is for Congress, not for us, to make.

We do not regard our statement in *Estate of Hetty B. Levy, supra,* quoted above, applicable, to the facts of this case; and we consider our holding in *Irene C. Moffett, supra,* as confined to the specific facts on which it was reached.

*Decisions will be entered for the respondent.*