REES BLOW PIPE MANUFACTURING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2965–62.   Filed January 30, 1964.

Charles A. Mayer (an officer), for the petitioner.
*Leslie M. Hartman*, for the respondent.

OPINION

ARUNDELL, *Judge:* Respondent determined deficiencies in income tax for the calendar years 1959 and 1960 in the amounts of $7,007.16 and $1,659.99, respectively.

The only issue is whether petitioner is entitled to deduct $17,780.93 in 1959 by reason of a judgment obtained against it which was affirmed in 1959, and also whether petitioner is entitled to deduct $3,712.43 in 1960 by reason of legal fees paid in connection with the suit.

The facts were stipulated and are so found.

Petitioner is a corporation, incorporated under the laws of the State of California in 1911 and since that time has engaged in manufacturing and installing heating, air conditioning equipment, and incinerators. Its present address is 2929 Fifth Street, Berkeley, Calif. It filed its Federal income tax returns with the district director of internal revenue at San Francisco.

Shortly after petitioner's incorporation, petitioner acquired certain real property at 340 Seventh Street, in San Francisco, Calif., where it conducted its manufacturing business. Throughout the years, petitioner acquired adjoining land and made several successive additions and alterations to the original building. This property, including the additions and alterations, will be referred to herein as the San Francisco property.

In January 1954 petitioner authorized its real estate brokerage firm to obtain a site for a new factory in Berkeley, Calif., and exchange or sell its San Francisco property. Petitioner's broker found that Sanfran Co., a San Francisco corporation, wished to expand its San Francisco plant, which was located near or adjacent to petitioner's San Francisco property. Petitioner's broker also found that the San Francisco Sulphur Co., hereinafter referred to as Stauffer Chemical, wished to sell a piece of land which it owned in Berkeley, Calif.

After negotiating for a period of time, the three companies consummated a three-way agreement. Pursuant to this agreement, on June 25, 1954, petitioner transferred its San Francisco property to Sanfran Co. Sanfran Co. paid $158,150 to Stauffer Chemical. Petitioner paid an additional $30,666.19 in cash and notes to Stauffer Chemical, and the latter company transferred two contiguous pieces of land in Berkeley to petitioner.

On its 1954 income tax return petitioner considered the 1954 exchange of properties with Sanfran Co. and Stauffer Chemical to be a nontaxable exchange. Thus, the Berkeley property received by petitioner in the exchange assumed the basis of the San Francisco property, transferred to Sanfran Co., plus the cash and notes given by petitioner in the exchange. The substituted basis was determined as follows:

| | |
|---|---:|
| Cash and notes | $30,666.19 |
| Adjusted basis of San Francisco property: | |
|     Land | 36,171.55 |
|     Building | 9,978.18 |
| | 76,815.92 |

On September 28, 1954, Sanfran Co. filed an application with the Department of Public Works of the city of San Francisco to change the use of the building on the San Francisco property from manufacturing to the proposed use as a commercial garage. In October 1954 this application was disapproved by the building inspector on the grounds that the building violated the provisions of the San Francisco building code relating to area, ventilation, and the type of construction required for buildings used as garages.

On April 19, 1955, the Sanfran Co. filed suit against petitioner, petitioner's real estate brokers, and their employee. The suit against the brokerage company and its employee was dismissed before trial. The complaint filed set forth two causes of action: The first, for willful or negligent misrepresentation that the San Francisco building, purchased from petitioner, was a class "C" building under the building code of the city and county of San Francisco, and that the building had side walls; the second, for fraudulent concealment of the missing walls and the building code violations. The trial court concluded that Sanfran Co. was entitled to nothing under the first cause of action but was entitled to judgment against petitioner in the amount of $20,000 on the second cause of action. Petitioner appealed to the District Court of Appeals of the State of California for the First Appellate District, which court, in 1959, affirmed the findings of the trial court.

In 1954 petitioner constructed a plant on the Berkeley property which, at the time of the 1957 sale of the balance of the Berkeley property to Rees Development Co. hereinafter referred to, had an adjusted basis of $128,986.41. In 1956 further capital improvements were made which, at the time of the 1957 sale hereinafter referred to, had an adjusted basis of $29,032.19.

In 1956 petitioner advanced legal fees of $5,009.06 to its attorneys in connection with the suit filed against it by Sanfran Co. This sum was deducted as a business expense on petitioner's tax return for 1956 and is not in issue here.

In 1956 petitioner sold 8,000 square feet of the Berkeley property for $8,000.

In 1957 petitioner sold the balance of the Berkeley property consisting of two parcels to Rees Development Co., a corporation controlled by the majority stockholders of petitioner. The contract provided that petitioner would be paid in a series of monthly installments of $1,000 each beginning in 1957 until the total net sales price of $178,063.67 was paid.

On petitioner's income tax return for 1957 petitioner reported a profit realized which was determined as follows:

| | |
|---|---:|
| Received for first parcel of Berkeley property with improvements___ | $283, 986. 41 |
| Received for second parcel of Berkeley property_____ | 20, 000. 00 |
| Received for improvements made on Berkeley property (sold separately) _____ | 29,032. 19 |
| Gross sales price _____ | 333, 018. 60 |
| Less mortgage assumed by buyer_____ | 154, 954. 93 |
| Net sales price as reported_____ | 178, 063. 67 |
| Less adjusted basis_____ | 71, 879. 59 |
| Profit realized_____ | 106, 184. 08 |

Petitioner received $12,000, or 6.73 percent, of the net sales price in 1957 and reported a gain in 1957 of $7,146.19 (which is 6.73 percent of $106,184.08).

No payments were received on the installment sale of the Berkeley property in 1958, 1959, or 1960.

At the end of petitioner's 1958 taxable year, $166,063.67 ($178,063.67 minus $12,000) of the net sales price of the Berkeley property and $99,037.89 ($106,184.08 minus $7,146.19) of the expected profit remained to be reported in future years as payments are received by petitioner under the installment sale contract.

Petitioner claimed a deduction on its 1959 income tax return in the amount of $22,685.10 captioned "Loss on San Francisco Lawsuit" which referred to the suit brought by Sanfran Co. against petitioner. The claimed loss was made up as follows:

| | |
|---|---:|
| Judgment plus court costs_____ | $21, 764. 47 |
| Interest _____ | 4, 904. 17 |
| Costs of appeal_____ | 272. 26 |
| Loss on bond put up as security_____ | 753. 26 |
| Total _____ | 27, 694. 16 |
| Less amount deducted as legal fees in 1956_____ | 5, 009. 06 |
| 1959 deduction_____ | 22, 685. 10 |

Respondent disallowed $17,780.93 of the claimed deduction computed as follows:

| | |
|---|---:|
| Claimed deduction for "Loss on San Francisco Lawsuit"_____ | $22, 685. 10 |
| Less: Interest_____ | 4, 904. 17 |
| Disallowed deduction per statutory notice_____ | 17, 780. 93 |

In the deficiency notice the respondent explained the disallowance thus:

(c) The deduction of $22,685.10 claimed as a loss arising from a law suit has been disallowed to the extent of $17,780.93 because it has not been established

that the amount in excess of $4,904.17 constitutes an ordinary and necessary business expense or an allowable loss deduction. Therefore, taxable income is increased in the amount of $17,780.93.

In 1960 petitioner claimed a deduction of $6,003, of which $3,712.43 represented legal fees paid in connection with the suit brought by Sanfran Co. against petitioner. Respondent disallowed $3,712.43 of the total amount claimed and explained the disallowance thus:

(b) The deduction of $6,003.00 claimed as legal and accounting expense has been disallowed to the extent of $3,712.43 because it has not been established that the amount in excess of $2,290.57 constitutes an ordinary and necessary business expense or an allowable loss deduction. Therefore, taxable income is increased in the amount of $3,712.43.

Petitioner contends that the $17,780.93 is allowable in 1959 either as a loss under section 165, I.R.C. 1954,[1] or, in the alternative, as an ordinary and necessary expense under section 162, I.R.C. 1954.[2] It also contends that the $3,712.43 is allowable as an ordinary and necessary expense under section 162, *supra*, or in the alternative, as a loss under section 165, *supra*.

The respondent contends that both amounts are capital expenditures for which no deduction shall be allowed under section 263, I.R.C. 1954.[3]

The respondent argues under his contention that both amounts should be added to the adjusted basis of the Berkeley property and that the profit from the remaining installment payments to be received by petitioner be recomputed on that basis. We do not agree with the respondent. In *Estate of Hetty B. Levy*, 17 T.C. 729, the decedent had acquired certain shares of stock as a gift from her husband in 1939 and 1941. Her husband died in 1942. She sold the stock in the taxable year 1945 and died in 1947. In 1946 she paid a deficiency in the estate tax of her husband and sought to add the amount paid to the basis of the stock sold in 1945. In holding this could not be done we said:

Moreover, we think that section 113(b)(1)(A) is not designed to allow adjustments to the basis of property for events that occur after the year of a completed

---

[1] SEC. 165. LOSSES.

(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\*　　\*　　\*　　\*　　\*　　\*　　\*

(f) CAPITAL LOSSES.—Losses from sales or exchanges of capital assets shall be allowed only to the extent allowed in sections 1211 and 1212.

[2] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business \* \* \*

[3] SEC. 263. CAPITAL EXPENDITURES.

(a) GENERAL RULE.—No deduction shall be allowed for—

(1) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate. \* \* \*

and closed transaction whereby a taxpayer finally disposes of the property. There is nothing in section 113 to support any such post-sale adjustments. The allowance of such adjustments would serve to keep a gain or loss transaction open indefinitely, and would be in contravention of the requirement of determining income taxes upon the net results of annual accounting periods. See *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359, *Security Flour Mills Co.* v. *Commissioner*, 321 U.S. 281. As we have said above, the ultimate question is the determination of the amount of gain realized on the sale in 1945. That is to be determined by the results of transactions in that year, and the determination of the amount realized in that year cannot be affected by events occurring in a subsequent year in the absence of statutory authority.

The sales of the Berkeley property in 1956 and 1957 were completed transactions in those years. The payment of the judgment in 1959 and the legal fees in 1960 were transactions occurring in 1959 and 1960, respectively. Each year must be treated as the unit of taxation. *Burnet* v. *Sanford & Brooks Co.*, 282 U.S. 359; *United States* v. *Lewis*, 340 U.S. 590; *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417. In the latter case the Supreme Court said:

If a taxpayer receives earnings * * *, he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money * * *. If in 1922 the government had prevailed, and the company had been obliged to refund the profits received in 1917, it would have been entitled to a deduction from the profits of 1922, not from those of any earlier year. * * *

The rule that each year stands on its own feet does not mean, however, that an examination of a previous year's return may not be made in order to determine the nature of the new fact for the purpose of ascertaining how the new fact is to be classified in computing taxable income for the year in which the new fact (here the judgment and legal expenses) happened. *Arrowsmith* v. *Commissioner*, 344 U.S. 6. In that case the taxpayers were the transferees of the assets of a corporation in which they had been the stockholders. They had received partial distributions from the corporation in 1937, 1938, and 1939 followed by a final one in 1940. They reported the profits received from these distributions as capital gains. As transferees, they were required in a later year (1944) to pay a judgment rendered against the corporation. In holding that the payment of the judgment in 1944 was a capital loss in 1944 rather than an ordinary business loss, the Supreme Court said:

It is contended, however, that this payment which would have been a capital transaction in 1940 was transformed into an ordinary business transaction in 1944 because of the well-established principle that each taxable year is a separate unit for tax accounting purposes. United States v. Lewis, 340 U.S. 590, 71 S. Ct. 522, 95 L. Ed. 560; North American Oil Consolidated v. Burnet, 286 U.S. 417, 52 S. Ct. 613, 76 L. Ed. 1197. But this principle is not breached by considering all the 1937–1944 liquidation transaction events in order properly

to classify the nature of the 1944 loss for tax purposes. Such an examination is not an attempt to reopen and readjust the 1937 to 1940 tax returns, an action that would be inconsistent with the annual tax accounting principle.

To the same effect is *Estate of James M. Shannonhouse*, 21 T.C. 422. In that case the taxpayers, several years prior to 1947, acquired certain real property in North Carolina. In April 1947 they sold the property by warranty deed. They reported the gain in their 1947 return as a long-term capital gain. Late in 1948 the new owners discovered that the property encroached upon adjoining property. The new owners spent $3,331.50 in eliminating the encroachment. They agreed to release the taxpayers from all claims under the warranty deed upon payment by the taxpayers to the new owners of the $3,331.50. The taxpayers paid this sum on or about June 4, 1949, and were released from all claims for damages and expenses incurred because of the encroachment. We held that the payment of the $3,331.50, plus $950 of attorney fees, was an outgrowth of the sale of the property on which a capital gain had been reported in 1947 and that under the *Arrowsmith* case the expenditures totaling $4,281.50 took on the character of capital losses deductible only as limited by section 117 of the 1939 Code, rather than as ordinary losses or non-business expenses as claimed by the taxpayers.

In the instant case we think that under the rationale of the *Arrowsmith* and *Shannonhouse* cases we must examine the earlier years to see how the amounts of $17,780.93 and $3,712.43 paid by the petitioner in 1959 and 1960, respectively, are to be treated for income tax purposes. We think that under these decisions these amounts take on the character of the three-way agreement consummated on June 25, 1954, which was a capital transaction on which gain or loss was deferred. Under this agreement the parties have considered the 1954 exchange of properties with Sanfran Co. and Stauffer Chemical to be a nontaxable exchange with the Berkeley property taking the basis of the San Francisco property, plus the cash and notes given by petitioner in the exchange. If the expenditures of $17,780.93 and $3,712.43 had occurred prior to the sale of the Berkeley property, it may well be that they would have had to be capitalized and added to the basis of such property for future gain or loss. But, having occurred subsequent to the sale of such property, we think, as stated above, the losses take on the nature of capital losses rather than ordinary losses under the three-way agreement of June 25, 1954. Under section 165 (f), *supra*, the said capital losses are "allowed only to the extent allowed in sections 1211 and 1212." *Arrowsmith* v. *Commissioner*, *supra; Estate of James M. Shannonhouse, supra.*

*Decision will be entered under Rule 50.*