George T. and Sophia Ritsos, et al. [1] v. Commissioner. Ritsos v. Commissioner
Docket Nos. 5344-69, 181-70, 193-70, 194-70, 195-70.
United States Tax Court
T.C. Memo 1971-116; 1971 Tax Ct. Memo LEXIS 218; 30 T.C.M. (CCH) 495; T.C.M. (RIA) 71116; May 19, 1971, Filed *218 Petitioners had advanced money on open accounts to a corporation in which they were stockholders. In 1963 petitioners sold all of their stock in the corporation and took back a promissory note in partial payment from the purchasers. In 1965, the note became worthless: Held, the loss on the note is not a business had debt loss since there was no debtor-creditor relationship between petitioners and the corporation after the sale. Held further, the note was not merely a substitution of one obligor (the purchasers) for another (the corporation) as to the open accounts. Facts show that the purchasers did not want any indebtedness outstanding against the corporation. The loss is a capital one. Arrowsmith v. Commissioner, 344 U.S. 6 (1952); Estate of James M. Shannonhouse, 21 T.C. 422 (1953); and Rees Blow Pipe Manufacturing Co., 41 T.C. 598 (1964), affirmed per curiam 342 F. 2d 990 (C.A. 9, 1965). Kenneth I. Solomon, 111 E. Wacker Dr., Chicago, Ill., for the petitioners. Lewis M. Porter, Jr., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies and an overassessment in these consolidated cases as follows: Petitioner
Year
Deficiency
Overassessment
George T. and Sophia Ritsos, Docket No.
1965
$3,113.07
5344-69
Nicholas T. and Demetra Ritsos, Docket No.
1965
1,383.53
181-70
T.P. and Ann Cavanaugh, Docket No. 193-70
1962
* *219 2,773.48
1965
1,346.48
1966
* $2,615.59
Zack T. and Helen Ritsos, Docket No. 194-70
1965
1,619.20
Peter T. and Rose Ritsos, Docket No. 195-70
1965
1,143.64 496 The sole issue presented to us is whether a loss incurred by petitioners occasioned by the worthlessness of a promissory note received by them in connection with a sale of corporate stock in a prior year is a long-term capital loss or whether such loss is a business bad debt loss. Findings of Fact Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. Petitioners George T. and Sophia Ritsos are husband and wife and at the time they filed their petition herein they resided in Chicago, Illinois. They filed a joint Federal income tax return for the taxable year 1965, prepared on the cash receipts and disbursements method of accounting, with the district director of internal revenue at Chicago, Illinois. Petitioners Nicholas T. and Demetra Ritsos are husband and wife and at the time they filed their petition herein they resided in Winnetka, Illinois. They filed a joint Federal income tax return for the taxable year 1965, prepared on the cash receipts and disbursements method of accounting, with the district director of internal revenue at Chicago, Illinois. Petitioners *220 T.P. and Ann Cavanaugh are husband and wife and at the time they filed their petition herein they resided in Chicago, Illinois. They filed a joint Federal income tax return for the taxable year 1965, prepared on the cash receipts and disbursements method of accounting, with the district director of internal revenue at Chicago, Illinois. Petitioners Zack T. and Helen Ritsos are husband and wife and at the time they filed their petition herein they resided in Chicago, Illinois. They filed a joint Federal income tax return for the taxable year 1965, prepared on the cash receipts and disbursements method of accounting, with the district director of internal revenue at Chicago, Illinois. Petitioners Peter T. and Rose Ritsos are husband and wife and at the time they filed their petition herein they resided in Chicago, Illinois. They filed a joint Federal income tax return for the taxable year 1965, prepared on the cash receipts and disbursements method of accounting, with the district director of internal revenue at Chicago, Illinois. On February 9, 1959, all of the stock in Dorsey Apartments, Inc. (hereinafter Dorsey) was acquired by T.P. Cavanaugh, the Ritsos brothers - George, Peter, *221 Zack and Nicholas, and Robert L. Moxley. Dorsey was formed by all of the foregoing individuals on or about the same date. Moxley later transferred his shares to the Robert L. Moxley Trust, created on May 1, 1961. The fixed assets of Dorsey consisted of 51 rental apartment units, an office and an equipment shop. The same parties also joined in a partnership venture to acquire another apartment complex. The partnership was know as the Moxley, Cavanaugh and Ritsos partnership, d/b/a the Dower Park Apartments (hereinafter Dower Park). The fixed assets of Dower Park consisted of 24 buildings containing 96 apartments. The rental properties owned by both Dorsey and Dower Park were located in Fort Lauderdale, Florida. On June 29, 1963, Dower Park sold all of its assets to Republic Realty Corporation (hereinafter Republic Realty) and Kenneth and Ann Burnstine, who also were the principal shareholders of Republic Realty, for the sum of $388,000. On the same date, all of the outstanding stock of Dorsey was also sold by petitioners and the Robert L. Moxley Trust to Republic Realty and the Burnstines for the sum of $200,000. The proceeds from the sale of the Dower Park assets and the Dorsey stock *222 were as follows: 497 Dower Park
Dorsey
Apart-
Apartments
ments, Inc.
- Assets -
- Stock -
Total
Selling Price
$388,000.00
$200,000.00
$588,000.00
Miscellaneous Charges
206.73
107.21
313.94
$388,206.73
$200,107.21
$588,313.94
Selling Costs & Prorated Expenses
$ 7,048.21
$ 3,004.77
$ 10,052.98
Existing Mortgage-Paid off
177,965.57
[1] 88,904.10
266,869.67
8 percent promissory note
secured by 2nd
purchase money
mortgage [2]
123,105.12
63,457.37
186,562.49
Cash to seller
80,087.83
44,740.97
124,828.80
$388,206.73
$200,107.21
$588,313.94
In summary, the gross proceeds received by the sellers were as follows: Dower Park
Dorsey
Apart-
Apartments
ments. Inc.
- Assets -
-Stock -
Total
Cash
$ 80,087.83
$ 44,740.97
$124,828.80
Second Purchase Money Mortgage
123,105.12
63,457.37
186,562.49
Gross Proceeds to Seller
$203,192.95
$108,198.34
$311,391.29 A Deposit Receipt Contract relating to the sale of the Dower Park assets and Dorsey stock was executed by the parties thereto on April 16, 1963. Such contract *223 provided, inter alia, as follows: * * * Sellers agree at the time of closing to deliver to purchasers all of the common stock of Dorsey Apartments, Inc., a Florida Corporation, free and clear from any and all liens and/or encumbrances, with the exception of those encumbrances which are being assumed by the purchaser. It is further understood that the sellers as herein described are meant to be the individual stockholders of said corporation, and that the sellers will further indemnify and hold harmless the purchasers from any liabilities of said corporation originating prior to the date of transfer. It is further agreed by the sellers that any and all indebtedness of said corporation to the individual stockholders and any interest thereon which may be accrued, is included as part of the consideration as set forth in the purchase price stated above, and the sellers herein agree to satisfy or cancel all such indebtedness at the closing. Donald J. Lunny was appointed by the sellers as their attorney to handle the closing of the transaction for the sale of the Dower Park assets and Dorsey stock. He was also to act as escrow agent for the sellers. Lunny received, inter alia, from George *224 Ritsos, on behalf of the sellers, to be placed in escrow in preparation for the closing relative to the sale of the Dorsey stock, the Dorsey stock certificates held by the sellers herein and promissory notes (on all of which Dorsey was the maker) as follows: To
Date
Amount
Total
Nick T. Ritsos
3-10-59
$1,250
Nick T. Ritsos
9-11-59
1,250
Nick T. Ritsos
12-8-59
1,375
$ 3,875
Zack T. Ritsos
3-10-59
1,250
Zack T. Ritsos
9-11-59
1,250
Zack T. Ritsos
12-8-59
1,375
3,875
Peter Ritsos
3-10-59
1,250
Peter Ritsos
9-11-59
1,250
Peter Ritsos
12-8-59
$1,375
$3,875
Geo. T. Ritsos
3-10-59
3,750
Geo. T. Ritsos
9-11-59
3,750
Geo. T. Ritsos
12-8-59
4,125
11,625
Thomas Cavanaugh
3-10-59
3,750
Thomas Cavanaugh
9-11-59
3,750
Thomas Cavanaugh
12-8-59
4,125
11,625
Robert L. Moxley
3-10-59
3,750
Robert L. Moxley
9-11-59
3,750
Robert L. Moxley
12-8-59
4,125
11,625
$46,500 498 At the time of the sale, the shareholders of Dorsey had a cost basis in their Dorsey stock and had loans outstanding to the corporation in the amounts indicated below in the columns headed "Capital Stock Cost" and "Notes Receivable," respectively; the shareholders also reported as long-term capital gain on their 1963 income tax returns their respective gain on the sale of the Dorsey stock, computed *225 as follows: Capital
Stock
Notes
Total
Selling
Long-term
Cost
Receivable
Cost
Price
Capital Gain
Robert L. Moxley
Trust,
Robert Conners,
$15,000.00
$ 9,016.00
$24,016.00
$ 27,049.58
$ 3,033.58
Trustee
T.P. Cavanaugh
15,000.00
9,016.00
24,016.00
27,049.58
3,033.58
George Ritsos
15,000.00
9,016.00
24,016.00
27,049.58
[1] 3,033.58
Peter Ritsos
5,000.00
3,005.33
8,005.33
9,016.53
1,011.20
Zack Ritsos
5,000.00
3,005.34
8,005.34
9,016.54
1,011.20
Nicholas Ritsos
5,000.00
3,005.33
8,005.33
9,016.53
1,011.20
Total
$60,000.00
$36,064.00
$96,064.00
$108,198.34
$12,134.34 On June 27, 1963, a trust known as the Florida Mortgage Trust was created for the purpose of taking title to and collecting the payments on the second purchase money mortgage given to secure the promissory note in the amount of $186,562.49 which was part of the proceeds of the sale of the Dower Park assets and Dorsey stock. Individual participation in the second purchase money mortgage was as follows:
Dower Park
Dorsey
Total
Robert L. Moxley
$ 41,035.04
$ 41,035.04
Robert L. Moxley Trust,
Robert V. Conners, Trustee
$15,864.35
15,864.35
T.P. Cavanaugh
41,035.04
15,864.35
56,899.39
George Ritsos
10,258.76
15,864.34
26,123.10
Peter Ritsos
10,258.76
5,288.11
15,546.87
Nicholas Ritsos
10,258.76
5,288.11
15,546.87
Zack Ritsos
10,258.76
5,288.11
15,546.87
$123,105.12
$63,457.37
$186,562.49
*226 The purchasers, Republic Realty and the Burnstines, borrowed the funds they obtained for the transaction from Biscayne Federal Savings and Loan Association (hereinafter Biscayne), giving Biscayne a first purchase money mortgage on the rental properties of both Dower Park and Dorsey. These funds were used to pay off the mortgage existing on the properties at the time of sale of the Dower Park assets and the 499 Dorsey stock; the remainder being remitted as cash proceeds to the sellers. In 1965, the purchasers, Republic Realty and the Burnstines, defaulted in their payments on both the first and second mortgages. A foreclosure action was instituted by Biscayne, the holder of the first mortgage. Subsequently, an action was initiated by the trustee of Florida Mortgage Trust, George T. Ritsos. On September 9, 1965, a summary final judgment against the purchasers was granted on behalf of the Florida Mortgage Trust by the Circuit Court of the 17th Judicial District, State of Florida, in the amount of $209,948.74. The second purchase money mortgage became worthless and the judgment unenforceable in 1965 after the authorities in the State of Florida were unable to find any property held in *227 the names of the debtors, Republic Realty and the Burnstines. The principal amounts collected by the sellers on the second purchase money mortgage amounted to $2,374.91 with respect to the sale of the Dower Park assets, and $1,240.52 with respect to the sale of the Dorsey stock. A partnership return of income (Form 1065) was filed by the Florida Mortgage Trust for the year 1965 under the name Moxley, Cavanaugh and Ritsos, d/b/a Dower Park Apartments, Fort Lauderdale, Florida. The loss reported in the partnership return (reflecting other income and expense as well) and the recomputed losses determined by the Commissioner and reflected in the notices of deficiency mailed to the petitioners herein, and as allocated to the individual sellers, are as follows: 500 As Determined by Respondent and
Reflected
As Reported
in
Statutory
Notices to
Petitioners
Hein
Ordinary
Section 1231
Rodinary
Section1231
Income
Net Gain
Income
(Loss)
Gain
Loss
(Loss)
(Loss)
Robert and
($ 33,236.74)
$ 40.51
$ 40.51
($ 54.80)
Bernice Moxley
[1] T.P. and Ann
( 46,086.01)
56.18
56.18
( 75.99)
Cavanaugh
Robert L. Moxley
Trust,
Robert V.
( 12,849.27)
15.67
15.67
( 21.19)
Conners, Trustee
George and Sophia
( 21,158.45)
25.79
25.79
( 34.89)
Ritsos
Zack and Helen
( 12,592.27)
15.35
15.35
( 20.76)
Ritsos
Nicholas and
( 12,592.27)
15.35
15.35
( 20.76)
Demetra Ritsos
Peter and Rose
( 12,592.27)
15.35
15.35
( 20.77)
Ritsos
Totals
($151,107.28)
$184.20
$184.20
($294.16)
*228 As Determined
by Respondent
and Reflected
Long-Term
Net Gain
Capital
Gain
Loss
[2] (Loss)
[3] Gain (Loss)
Robert and
$ 40.51
($23,778.66)
($23,738.15)
Bernice Moxley
[1] T.P. and Ann
56.18
( 23,778.66)
( 23,722.48)
($15,554.21)
Cavanaugh
Robert L. Moxley
Trust,
Robert V.
15.67
15.67
( 15,554.21)
Conners, Trustee
George and Sophia
25.79
( 5,944.68)
( 5,918.89)
( 15,554.21)
Ritsos
Zack and Helen
15.35
( 5,944.68)
( 5,929.33)
( 5,184.74)
Ritsos
Nicholas and
15.35
( 5,944.68)
(5,929.33)
( 5,184.74)
Demetra Ritsos
Peter and Rose
15.35
( 5,944.68)
( 5,929.33)
( 5,184.74)
Ritsos
Totals
$184.20
($71,336.04)
($71,151.84)
($62,216.85)
T.P. and Ann Cavanaugh
($41,477.41)
$ 50.56
$ 50.56
($ 68.39)
Louis J. Sousa
( 4,608.60)
5.62
5.62
( 7.60)
($46,086.01)
$ 56.18
$ 56.18
($ 75.99)
T.P. and Ann Cavanaugh
$50.56
($21,400.79)
($21,350.23)
($13,998.79)
Louis J. Sousa
5.62
( 2,377.87)
( 2,372.25)
( 1,555.42)
$ 56.18
($23,778.66)
($23,722.48)
($15,554.21)
*229 501 Opinion We must decide the character of the loss sustained by petitioners upon the worthlessness of a promissory note received in a sale of corporate stock in a prior year. The petitioners contend that this loss is entitled to treatment as a business bad debt. The Commissioner's position is that since the note was received as part consideration in a capital transaction, the character of the loss is fixed by reference to that transaction and hence it is a long-term capital loss. We agree with the Commissioner's position. Petitioners advance two arguments in support of the business bad debt theory. They first argue that since the note in question was acquired by them on the disposition of Dorsey, in the course of their business as managers and operators of rental property, it qualifies as a business bad debt under section 166, I.R.C. 1954, and the regulations thereunder. [2] It seems that petitioners are attempting to bring themselves within section 1.166-5(d), Example (1), Income Tax Regs., which describes the following as a business bad debt loss where A, the proprietor of a business, has extended credit to B on an open account in a prior year: In 1956 A sells the business but *230 retains the claim against B. The claim becomes worthless in A's hands in 1957. A's loss is not controlled by the nonbusiness debt provisions, since the original consideration has been advanced by A in his trade or business. Unfortunately, this line of reasoning is fallacious because in the case herein the money was advanced to a corporation and it was the corporation that conducted the business, not the petitioners. See Whipple v. Commissioner [63-1 USTC 9466], 373 U.S. 193 (1963). In this setting, when the sale was transacted, the note was given by the purchasers to secure the unpaid balance on the purchase price and not by the corporation as evidence of its prior debt to petitioners. After the sale, the corporation and the petitioners were no longer in the position of debtor-creditor. The debtor-creditor relationship *231 existed solely between the purchasers and petitioners. This setting brings us to petitioners' second argument. Petitioners next contend that the note was merely a substitution for the prior indebtedness with only a change in the obligor. In support of this position petitioners refer us to the Deposit Receipt Contract which provided, inter alia: It is further agreed by the sellers that any and all indebtedness of said corporation to the individual stockholders and any interest thereon which may be accrued, is included as part of the consideration as set forth in the purchase price stated above, and the sellers herein agree to satisfy or cancel all such indebtedness at the closing. and to the testimony of George Ritsos on the intention of the parties as regards the outstanding debts. George testified as follows: Q: I am wondering if you can relate to us the substance of your negotiation with the purchasers of Burstine [sic] and Republic Realty as related to that paragraph in the agreement? A: Now, Mr. Burstine [sic], who of course, was the moving part on behalf of the purchaser, wanted it made absolutely clear in this agreement that any amount Dorsey Apartments, Inc. owed to the stockholders, *232 * * * that they were going to be surrendered and cancelled and that the second mortgage which we would take back on a deal within parts and replace these notes. He didn't want them outstanding against Dorsey Apartments, Inc. This, say petitioners, shows that the note received replaced the outstanding notes payable to the stockholders-sellers by Dorsey. While it may well have been the intent of the petitioners to have the notes act as they contend, we cannot say that such was also the intention of the purchasers. The testimony excerpted above, we think, clearly states that the purchasers speaking through Burnstine wanted the original notes canceled and surrendered and not to remain outstanding against the corporation, Dorsey. We cannot hold that there was any such substitution as contended by petitioners. They have not proven to us that what they contend is what was intended by the parties to the sale. Therefore, on the rationale of Arrowsmith v. Commissioner, 344 U.S. 6 (1952); Estate of James M. Shannonhouse, 21 T.C. 422 (1953); and Rees Blow Pipe Manufacturing Co., 502 41 T.C. 598 (1964), affirmed per curiam 342 F. 2d 990 (C.A. 9, 1965), the character of the loss sustained by *233 petitioners is fixed by reference to the original transaction. The 1963 sale is unquestionably a capital transaction and hence the loss is a capital one. Accordingly, Decisions will be entered for the respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Nicholas T. and Demetra Ritsos, docket No. 181-70; T.P. and Ann Cavanaugh, docket No. 193-70; Zack T. and Helen Ritsos, docket No. 194.70; Peter T. and Rose Ritsos, docket No. 195-70.↩
*. These amounts are not in controversy herein.
1. Mortgage encumbering the assets of Dorsey. ↩
2. One promissory note executed on June 27, 1963 in the amount of $186,562.49 was given by the purchasers to cover the combined balance due on both the sale of the Dower Park assets and the sale of the Dorsey stock.↩
1. George Ritsos apparently reported a gain of $1,011.20 although his actual gale of his Dorsey stock was $3,033.58 as computed in the schedule.↩
1. 10 percent of the Cavanaugh interest was sold to Louis J. Sousa prior to the end of the year 1965. Accordingly, the amounts set forth above after the Cavanaughs' name were allocated between the Cavanaughs and Sousa and reported by them on their respective individual income tax returns (Form 1040) for the year 1965, as follows: ↩
2. Relative to sale of Dower Park assets. ↩
3. Relative to sale of Dorsey stock.↩
2. Sec. 1.166-5(b). Nonbusiness debt defined. For purposes of section 166 and this section, a nonbusiness debt is any debt other than - (1) A debt which is created, or acquired, in the course of a trade or business of the taxpayer, determined without regard to the relationship of the debt to a trade or business of the taxpayer at the time when the debt becomes worthless; or * * *↩