WILLIAM L. MITCHELL AND MARIAN S. MITCHELL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2522–67.    Filed April 30, 1969.

---

*Harry S. Stark* and *Leonard J. Prekel*, for the petitioners.
*Robert T. Hollohan*, for the respondent.

172

OPINION

Petitioner seeks to deduct the amount of the payment made to his employer as an ordinary and necessary business expense under section 162(a) of the Internal Revenue Code of 1954.[3] The respondent, by his adjustment, has allowed a deduction only for a long-term capital loss on the theory of *Arrowsmith* v. *Commissioner*, 344 U.S. 6 (1952).

Petitioner's argument in favor of an ordinary and necessary business expense deduction is premised upon his contentions that: (1) He is in the business of rendering services to his employer, (2) that his payment of $17,939.29 to General Motors was not made because of a violation of section 16(b), and (3) that such payment was made solely to prevent damage to his business reputation, to prevent embarrassment to himself and his employer, to avoid the expense of litigation, and to protect his position as an employee.

Respondent agrees that petitioner's employment as a corporate executive may constitute a trade or business separate and distinct from that of his employer, but takes issue with petitioner that any damage to his business reputation would have resulted from his failure or refusal to make the payment in question. In addition, by his allowance of a long-term capital loss to petitioner in the statement accompanying his notice of deficiency and by statements contained in his brief, respondent raises another issue which, so far as we have been able to determine, has not been previously decided. He contends that petitioner previously reported a capital gain on his sale of General Motors stock and that petitioner's payment of the alleged section 16(b) "profit" was so closely related to the earlier sale as to require the payment's characterization as a capital loss under the rationale of *Arrowsmith* v. *Commissioner*, *supra*.[4] In effect, he contends that the question whether or not petitioner made the payment to protect his business reputation is therefore irrelevant. We do not agree.

In *Arrowsmith*, the taxpayers received distributions upon the complete liquidation of a corporation and reported the resulting profit as

---

[3] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

[4] Respondent's position in this case stems directly from his view as expressed in Rev. Rul. 61–115, 1961–1 C.B. 46, that: "The income tax significance of the capital stock dealings giving rise to the [sec. 16(b)] payment determines whether there is an ordinary deduction or a capital loss."

capital gain. In a later year, the taxpayers, as transferees of the corporation's assets, paid a judgment against the corporation and claimed a deduction as an ordinary loss. The Supreme Court held that it was proper to consider the earlier transaction in order to classify the nature of the later loss, and determined that the liabilities paid in the later year were "directly related to" and "tied together" with the earlier liquidating distributions and, therefore, the later deductions should be treated as capital losses. From the *Arrowsmith* decision have flowed a number of other cases where, because of the integral connection of a taxable transaction in a later year to a taxable transaction in an earlier year, the character of the gain or loss in the later transaction is determined by the capital or noncapital nature of the gain or loss in the earlier one. *Alvin B. Lowe*, 44 T.C. 363 (1965), gain incurred by retention by seller of part of purchase price of stock after default by buyer, held to be capital gain; *Rees Blow Pipe Manufacturing Co.*, 41 T.C. 598 (1964), affirmed per curiam 342 F. 2d 990 (C.A. 9, 1965), amount paid by seller in satisfying judgment for misrepresentation in sale of building, held capital loss; *Estate of James F. Shannonhouse*, 21 T.C. 422 (1953), amounts paid by seller of realty to purchaser in discharge of liabilities for breach of covenant of title, held capital loss.

In the instant case in 1962, when petitioner sold General Motors stock, he reported a long-term capital gain and paid the resulting tax. That gain was then his property without a claim against it on the part of anyone. It was a completed transaction. In 1963, petitioner purchased other shares of General Motors common stock at a price fixed by stock options owned by him. Upon this latter transaction, nothing of tax consequence took place. Only upon the sale or disposition of the purchased stock could it be said that anything with tax incidence had occurred. Secs. 1001, 1002, I.R.C. 1954. Because the purchase of the stock in 1963 took place within 6 months of the sale transaction, however, an entirely separate and distinct statute from the Internal Revenue Code was alleged to have come into operation, i.e., section 16(b) of the Securities Exchange Act of 1934. Violation of section 16(b) has no ipso facto tax effect whatsoever but merely creates an indebtedness between an "insider" officer of a corporation and his corporate employer.

It is noteworthy that there is no relationship between the amount of the capital gain realized upon the sale transaction to which respondent would relate the loss and the amount which "inures" to the stock issuer under section 16(b). The fact is that a violation of section 16(b) could well occur where the sale transaction had actually resulted in a loss to the violator, but the measure of the amount which inures to the stock issuer under its provisions remains the same. For example, if X corporation stock with a basis of $20 is sold for $10 ($10 loss),

and within 6 months other X corporation stock is acquired for $5, under section 16(b) there is a $5 "profit" that inures to X corporation.[5] See, Loss, Securities Regulation 1062 (2d ed. 1961).

It appears clear to us that it may not be said with respect to the transactions herein that the payment to the stock issuer grew out of either the earlier sale or later purchase of stock taken singly. Rather, it grew directly and solely from the "sale-purchase" occurrence, which has only securities law significance, and the effect of section 16(b) thereon. Thus, we think respondent's attempt to relate the payment to the stock issuer under section 16(b) to the earlier sale of stock conflicts with the realities of the situation.

Further divorcing the payment in question here from either stock transaction is the fact which we have found that petitioner's payment to General Motors was made for reasons other than concession of liability for violation of section 16(b). Such payment was made after he was advised that there was reasonable ground to doubt that he was an "insider" within the meaning of that section. It was clearly made without any admission that he was in violation thereof and prior to any judicial or administrative decision to that effect.

In sum, it appears to us that the underlying element in the *Arrowsmith* line of case law is the existence of an integral relationship between two taxable transactions in separate years, so that the characterization of the latter transaction by the earlier one is necessary in order to reflect the true taxable income of the taxpayer. Only by such reasoning does the logic of those decisions become evident. The payment in the instant case has no such relationship to the capital gain on the sale of the General Motors stock and we see no principle of tax law which requires its treatment as a capital loss.

Thus, we are left with the question of whether petitioner's payment of the $17,939.29 constitutes an ordinary and necessary business expense. Expenditures incurred by a taxpayer to protect his business reputation or to avoid unfavorable business or commercial publicity have been regarded as deductible. *Paul Draper*, 26 T.C. 201 (1956); *William L. Butler*, 17 T.C. 675 (1951). The case of *Laurence M. Marks*, 27 T.C. 464 (1956), is directly in point. In that case we held that payment to a corporation of "insider's profits" under section 16(b) was

---

[5] Violation of sec. 16(b) may also occur where there is a purchase of stock followed by a sale of stock of the same corporation. The stock sold need not be the same stock that was previously purchased within the 6-month period. (Loss, Securities Regulation 1058 (2d ed. 1961)). Thus, it is again possible to have an economic loss yet a sec. 16(b) profit, e.g., purchase of X corporation stock at $5 followed by a sale at $10 of previously acquired X corporation stock with a basis of $20, results in a $10 economic loss on the sale but a $5 sec. 16(b) "profit." If, however, the stock sold is the same stock that was purchased within 6 months, the issue raised by respondent in this case, i.e., capital gain followed by ordinary deduction, does not arise since any sale of stock held for less than 6 months will give rise to short-term capital gain which is taxed as ordinary income.

deductible as an ordinary and necessary business expense, where the principal motives of the taxpayer in making the payment were to avoid unfavorable publicity with possible injury to his business reputation and to avoid the expense which further negotiation and, possibly, litigation would bring. See *Joseph P. Pike*, 44 T.C. 787 (1965). We have found as a fact that the payment by petitioner herein was made in the belief that it would avoid injury to his business reputation and embarrassment to General Motors and himself, as well as possible expensive litigation. Nor can we say that petitioner was unreasonable in this belief. Cf. *Old Town Corporation*, 37 T.C. 845 (1962). Respondent contends that petitioner has failed to establish by evidence that failure to make the payment in question would actually have resulted in damage to his business reputation. We hold that if from the evidence adduced it appears petitioner had a reasonable basis for his belief that damage would result to his business reputation and career, that is sufficient. This record contains ample evidence of such reasonable basis for his belief. Thus, we hold that the payment in question is deductible as an ordinary and necessary expense of petitioner's trade or business of being an employee. *Laurence M. Marks, supra; Joseph P. Pike, supra;* cf. *Vincent E. Oswald*, 49 T.C. 645 (1968) ; Rev. Rul. 69–115, I.R.B. 1969–11, 9.

Reviewed by the Court.

*Decision will be entered for the petitioners.*

———

DRENNEN, *J.*, concurring: I cannot agree with the majority opinion that because the payment "grew directly and solely from the 'sale-purchase' occurrence" it has only securities law significance and no tax law significance. I would not dismiss *Arrowsmith* v. *Commissioner*, 344 U.S. 6, so readily. Had there been no other overriding business reason for the payment, I think the rationale of *Arrowsmith might* require treatment of the payment as a capital loss, if it is deductible at all. However, the majority opinion has made an ultimate finding of fact that the payment was made to avoid injury to petitioner's business reputation and disadvantage to his career with General Motors, which I accept as a factual determination by the trial judge. If this was the ultimate reason for the payment I doubt that *Arrowsmith* would require treatment of the payment as a capital loss, rather than a business expense, even though the payment may have had its genesis in the "sale-purchase occurrence."

It occurs to me that this payment might in reality be considered an additional cost of the new stock petitioner purchased under the stock option and should be treated as a capital investment rather than as either a deductible loss or expense, but it is my understanding that this argument was not made to the Court.

TIETJENS, *J.*, agrees with this concurring opinion.