James E. **ANDERSON** and Alice Anderson, Appellees,

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellant.**

**No. 72–1210.**

United States Court of Appeals, Seventh Circuit.

Heard Feb. 27, 1973.

Decided June 14, 1973.

William J. Campbell, Senior District Judge, dissented and filed opinion.

---

2. This concession was not made before the District Court.

Scott P. Crampton, Asst. Atty. Gen., John A. Townsend, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for appellant.

David J. Creagan, Jr., Chicago, Ill., for appellees.

Before SWYGERT, Chief Judge, CUMMINGS, Circuit Judge, and CAMP-BELL, Senior District Judge.[1]

CUMMINGS, Circuit Judge.

This appeal involves an asserted $21,897.64 deficiency in income taxes for 1966. The question is whether taxpayer's payments made to satisfy an apparent liability under Section 16(b) of the Securities Exchange Act of 1934 (15 U. S.C. § 78p(b)), which requires a corporate insider to surrender to his employer profit from short-swing trading in the corporation's stock, are to be treated as a long-term capital loss or as ordinary

and necessary business expense deductible under Section 162(a) of the Internal Revenue Code of 1954. With Judges Dawson and Quealy dissenting, the Tax Court decided that the payments constituted ordinary and necessary business expense. 56 T.C. 1370. In so doing it adhered to its decision in William M. Mitchell, 52 T.C. 170 (1969), refusing to follow the Sixth Circuit, which reversed Mitchell, 428 F.2d 259 (6th Cir. 1970), certiorari denied, 401 U.S. 909, 91 S.Ct. 868, 27 L.Ed.2d 807. We also reverse the Tax Court.

The facts are not in dispute. The Tax Court found that in 1962 and in 1963 taxpayer James E. Anderson, a vice president of Zenith Radio Corporation, purchased 1,000 shares of Zenith common stock for $14,038.90 under an employee stock purchase agreement. On April 1 and 7, 1966, he sold those shares for $162,923.21, resulting in a capital gain of $148,884.31. On April 11, 1966, he purchased 750 shares of Zenith common stock for $49,312.50 under another employee stock purchase agreement with Zenith.

About a month after the April 11 purchase, Zenith's legal department advised taxpayer that the April 1 and 7 sales and the April 11 purchase fell within the insider, short-swing-profit prohibition of Section 16(b) of the Securities Exchange Act,[2] entitling Zenith to the profit realized by taxpayer. Subsequently in 1966, taxpayer paid Zenith $51,259.14, the amount demanded, in two installments.[3]

1. Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

2. In pertinent part, Section 16(b) provides:
   "For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than

six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period of exceeding six months. * * *." (15 U.S.C. § 78p(b))

3. Although normally the liability formula is the sales price less the lowest purchase price, where, as here, the pur-

In his 1966 tax return, taxpayer treated the $148,884.31 gain realized on the sale of the 1,000 shares of Zenith stock as a long-term capital gain. He also deducted the $51,259.14 he paid Zenith under Section 16(b) as an ordinary and necessary business expense. However, the Commissioner determined that the payments to Zenith should be treated as long-term capital losses rather than ordinary losses, resulting in a deficiency in the amount of $21,897.64. The Tax Court made an ultimate finding of fact that the payments to Zenith were made to preserve taxpayer's employment with Zenith and avoid injury to his business reputation. It held that the payments were an ordinary and necessary business expense, deductible under Section 162(a) of the Internal Revenue Code of 1954.

The issue here is whether the rule of Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L. Ed. 6, applies to require that the payments in satisfaction of the 16(b) liability be characterized in the same terms as the profit realized on the sale of the stock, namely as a long-term capital transaction. In *Arrowsmith* the taxpayers reported distributions in corporate liquidation as long-term capital gains. In a later year, they were required as transferees to pay a judgment rendered against the corporation, and they attempted to treat the payment as an ordinary business loss. Pointing out that this treatment allowed a much larger deduction than capital loss treatment (*Id.* at 7, 73 S.Ct. 71), the Supreme Court held that the loss was capital because the liability was imposed on taxpayers as transferees of the liquidation distribution assets and not based on any ordinary business transaction of theirs apart from the liquidation proceedings. *Id.* at 8, 73 S.Ct. 71.

In *Mitchell*, the Tax Court found the touchstone of the *Arrowsmith* rule to be an integral connection between the tax transaction in question and the earlier taxable event. 52 T.C. at 174. It could find no such connection because the earlier taxable event was only the sale of stock and not the subsequent repurchase. No liability grew out of the sale, which as soon as it occurred was a "completed transaction," and upon the later purchase "nothing of tax consequence took place." Since the transaction in question—the 16(b) payment—"grew directly and solely from the 'sale-purchase' occurrence, which has only securities law significance," the Tax Court found no integral relationship between the sale and the payment. *Id.* at 174–175.

The Sixth Circuit concluded that had the Tax Court considered the application of *Arrowsmith* in United States v. Skelly Oil, 394 U.S. 678, 89 S.Ct. 1379, 22 L. Ed.2d 642 it would have concluded, as did the Sixth Circuit, that only a capital loss was available to Mitchell. In *Skelly Oil*, taxpayer reported income subject to a 27½% oil depletion allowance, and in a later year sought to deduct the full amount of refunds it was required to make. The Supreme Court held that "the Code should not be interpreted to allow respondent 'the practical equivalent of double deduction,'" and, hence, that "the deduction allowable in the year of repayment must be reduced by the percentage depletion allowance * * *." 394 U.S. at 684, 89 S.Ct. at 1383. The Court found the case "really no different" from *Arrowsmith,* and stated:

"The rationale for the *Arrowsmith* rule is easy to see; if money was taxed at a special lower rate when received, the taxpayer would be accorded an unfair tax windfall if repayments were generally deductible from receipts taxable at the higher rate applicable to ordinary income. The Court in *Arrowsmith* was unwilling to infer that Congress intended such a result." *Id.* at 685, 89 S.Ct. at 1383.

chase is made under an option acquired more than six months prior to its exercise, the amount of liability is calculated by subtracting from the sales proceeds the lowest market price of any security of the same class within six months before or after the date of the sale. 17 C.F.R. § 240.16b–6(a) and (b). See Kornfeld v. Eaton, 327 F.2d 263, 265 (2d Cir. 1964).

In our case the Tax Court reconsidered its position but adhered to its view in *Mitchell,* adding to the reasoning therein that this case was different from *Arrowsmith* and *Skelly Oil* because taxpayer did not make the 16(b) payment to Zenith in the same capacity as he sold the stock. That is, "[t]he sale was made by petitioner in his capacity as a stockholder of Zenith. His obligation to make the payment in question arose out of his status as an employee of Zenith. Neither the sale or purchase nor the combination thereof imposed any obligation upon him." 56 T.C. at 1374–1375.[4]

We conclude that *Arrowsmith,* with and without the benefit of its interpretation in *Skelly Oil,*[5] is applicable to this case and find the Tax Court's distinctions unpersuasive.

Although no 16(b) liability would have attached had taxpayer simply sold his stock and not made an advantageous repurchase within six months, the fact that liability is predicated on the sale-purchase occurrence does not mean the 16(b) payments were not integrally related to the earlier sale. It certainly seems the most apt characterization to say that the payments represent a portion of the sales proceeds, and adjustment on the sale price. The amount of liability is calculated by subtracting from the sales proceeds the lowest purchase price within the six-month period.[6] Gratz v. Claughton, 187 F.2d 46, 50–52 (2d Cir. 1951), certiorari denied, 341 U.S. 920, 71 S.Ct. 741, 95 L.Ed. 1353; Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir. 1943), certiorari denied, 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446; II Loss, Securities Regulation, 1062–1063 (1961). And notably interest on

the 16(b) payments may be required from the date of the sale preceding the purchase.[7] B. T. Babbit, Inc. v. Lachner, 332 F.2d 255, 258 (2d Cir. 1964).

Furthermore, the Tax Court has given only dubious, conceptual justification for isolating the earlier sale from the payments in question and insulating the latter from capital transaction treatment. After all, as the dissenting opinion of the Tax Court noted, the 16(b) payments were "inextricably intertwined with taxpayer's April 1966 stock transactions." Bifurcating the sale and payments smacks of artificiality, and characterizing the sale-purchase occurrence as without tax significance could only have been done in a vacuum. Since there is hardly anything inevitable about whether the 16(b) payments inherit the capital character of the sale transaction, we think the purpose and operation of Section 16(b) relevant to the determination. "Congress intended the statute to curb manipulative and unethical practices which result from the misuse of important corporate information of the personal aggrandizement or unfair profit of the insider." Bershad v. McDonough, 428 F.2d 693, 696 (7th Cir. 1970), certiorari denied, 400 U.S. 992, 91 S.Ct. 458, 27 L.Ed.2d 440. In its operation " * * * the statute was intended to be thoroughgoing, to squeeze all possible profits out of stock transactions * * * " within its embrace. Smolowe v. Delendo Corp., 136 F.2d 231, 239 (2d Cir. 1943). If an insider taxpayer may through short-swing trading realize profit taxable at favorable capital gains rates, and then take an ordinary business expense deduction when he disgorges part of that profit under 16(b), he may profit handsomely from his short-swing dealing.[8] Indeed, in the in-

---

4. The Tax Court has reaffirmed its reasoning in this case in Nathan Cummings, 60 T.C. 91 (1973).

5. But see Rabinovitz, Effect of Prior Year's Transactions on Federal Income Tax Consequences of Current Receipts or Payments, 28 Tax L.Rev. 85 (1972).

6. See note 3, *supra.*

7. It is of course immaterial that the present taxpayer apparently paid Zenith less interest than may be required under law.

8. If the taxpayer makes his 16(b) payment in a year subsequent to the year he reports his gain from the sale, the tax impact of his deduction for that pay-

stant case, if the taxpayer were allowed to offset his $51,259.14 payments against ordinary income, he would receive a net tax profit of $21,897.64 as a result of his short-swing trading. Thus the Government would be subsidizing approximately 43% of taxpayer's Section 16(b) liability. Without good reason, we are unwilling to interpret the Internal Revenue Code so as to allow this anomalous result which severely and directly frustrates the purpose of Section 16(b). See United States v. Skelly Oil, 394 U.S. 678, 685, 89 S.Ct. 1379, 22 L.Ed.2d 642; cf. Tank Truck Rentals, Inc. v. Commissioner of Internal Revenue, 356 U.S. 30, 78 S.Ct. 507, 2 L.Ed. 2d 562.

The Tax Court's attempted distinction based on the assertedly different capacities of the taxpayer when selling his stock and when disgorging his short-swing profits is also unpersuasive. Taxpayer sold his stock as an insider, more specifically as an officer-shareholder. The demand for payment was addressed to him in that very same capacity. Evidently what the Tax Court meant by its capacity distinction is that the taxpayer was prompted to make the payment to protect his employee status. But nothing in *Arrowsmith* or in *Skelly Oil* suggests that the purpose of the taxpayer in satisfying the demand must be rooted in the exclusively identical capacity in which the profit was realized and the demand was made.

Moreover, the Tax Court's statement that taxpayer's obligation to make the payment was not imposed by the combination sale-purchase is unrealistic. Although there was no adjudication of Section 16(b) liability, neither has taxpayer suggested any defense whatsoever. Taxpayer engaged in a cash-for-stock transaction that resulted in a sale and purchase within the six-month statutory period, and such a transaction is "clearly encompassed within the purview of § 16(b)." Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 593, 93 S.Ct. 1736, 1744, 36 L.Ed.2d 503. In such cases the liability is, as a practical matter, inexorable. See II Loss, Securities Regulation 1043 (1961). Where, as here, the taxpayer has not proposed any defense theory, much less raised substantial doubt about his liability, to allow him an ordinary deduction merely because he pays promptly instead of awaiting litigation is untenable.

Finally, if not apparent from the above, we need not review the Tax Court's determination that the taxpayer's payment was motivated by a desire to preserve his employment with Zenith and avoid injury to his business reputation. As did the Sixth Circuit, we find this business purpose to be irrelevant in determining whether the rule of *Arrowsmith* applies. 428 F.2d at 259.

We have considered the remaining arguments advanced by the taxpayer and find them to be without merit.[9]

ment will depend upon his marginal tax rate and sources of income, even though the character of the deduction is limited by the nature of the sale. Nevertheless, so limiting the nature of the deduction makes the tax law substantially neutral with regard to 16(b) and precludes the untoward possibility of an insider-taxpayer deliberately availing himself of a windfall net tax profit through short-swing trading. Moreover, the discrepancies in the tax impact may be viewed "as an unavoidable consequence of the annual accounting system." United States v. Skelly Oil Co., 394 U.S. 678, 681, 89 S.Ct. 1379, 1381.

9. It has been suggested by commentators that the proper solution is to add the

16(b) payment to the basis of the purchased shares. Insofar as this suggestion is predicated upon the inapplicability of *Arrowsmith* in a sale-purchase situation because "the requirement of repayment arises most directly from the purchase," we reject it. See Rabinovitz, *supra*, note 5 at 109. Insofar as it is predicated on the view that a capital loss deduction in the year of repayment will be less likely to produce the economic equivalent of a reduction of the amount realized in a prior year's sale than an addition to the basis of the purchased shares, we need not decide the appropriateness of this alternative since, in addition to the fact that the parties have not argued it, both the sale and

Reversed and remanded for entry of decision for the Commissioner.

WILLIAM J. CAMPBELL, Senior District Judge (dissenting).

I respectfully dissent. In light of the Tax Court's ultimate finding that the taxpayer's payment to Zenith was made to preserve his employment and to avoid injury to his business reputation, this seems to me to be a case wherein such expenditures fall squarely within the definition of deductible business expenses under § 162(a) of the Internal Revenue Code of 1954. 26 U.S.C. § 162(a); Lawrence M. Marks, 27 T.C. 464, 467 (1956), (Acq.1966–1 CB–2); Joseph P. Pike, 44 T.C. 787 (1965), (Acq.1968–2 CB–2).

The majority has concluded that the taxpayer's purpose in making the payments is "irrelevant," and in reliance upon *Arrowsmith* and its progeny has reversed the Tax Court. See, Arrowsmith v. Commissioner, 344 U.S. 6, 73 S. Ct. 71, 97 L.Ed. 6 (1952); United States v. Skelly Oil Co., 394 U.S. 678, 89 S.Ct. 1379, 22 L.Ed.2d 642 (1969). My reading of *Arrowsmith* convinces me that its application is limited to the situation where two separately taxable transactions are really but elements of one continuous or integrated transaction, and the taxpayer's capacity with respect to those transactions is identical. Here, as the Tax Court specifically found, the sale was made by the taxpayer in his capacity as a shareholder of Zenith, yet his obligation to make the payment in question is attributable to his status as an employee of Zenith. Standing alone,

neither the sale, the purchase nor the combination thereof imposed any obligation on him with respect to the payment to Zenith. I would conclude, therefore, that the very limited holding of *Arrowsmith* is inapposite.

In my view, the real thrust of the majority's opinion is that it would be "anomalous" and somehow inequitable to permit the taxpayer to "profit" by way of a tax advantage from his short-swing dealing in apparent violation of § 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p(b)). In short, the majority would invoke the Internal Revenue Code to enforce the policies of the Securities Exchange Act of 1934. However, general equitable considerations have no place in the administration of tax laws. See Lewyt Corp. v. Commissioner of Internal Revenue, 349 U.S. 237, 240, 75 S.Ct. 736, 99 L.Ed. 1029 (1955). Equally uncontrolling to an interpretation of the Code are this Court's and the Commissioner's views of legislative policy and statutory symmetry. United States v. Shirah, 253 F.2d 798, 800(4th Cir. 1958). It is these considerations that I would find "irrelevant" to our task of interpreting the revenue laws.

In my view the criteria of statutory construction are the words of the statute themselves, when clear and unambiguous. The Tax Court's ultimate finding that the payments were made by the taxpayer for a business purpose stands unchallenged. That court therefore concluded that they were deductible business expenses under § 162(a) of the Code. I would affirm.

---

the repayment occurred in the same taxable year. See Lokken, Tax Significance of Payments in Satisfaction of Liabilities Arising Under Section 16(b) of the

Securities Exchange Act of 1934, 4 Ga. L.Rev. 298, 321 (1970). In such a situation a capital loss deduction is most appropriate. *Id.* at 315.