NATHAN CUMMINGS AND JOANNE T. CUMMINGS, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2653–71.   Filed October 2, 1973.

*Anderson A. Owen, Edward W. Rothe,* and *Glen H. Kanwit,* for
the petitioners.

*Nelson E. Shafer,* for the respondent.

OPINION

SIMPSON, *Judge:* An opinion was filed in this case on April 23, 1973,
60 T.C. 91. In such opinion, we held that in the circumstances of the
case, the petitioner was entitled, by virtue of section 162 of the In-
ternal Revenue Code of 1954,[1] to deduct as an ordinary and necessary
business expense a payment made to MGM. Such payment was made
after an indication that the petitioner might be liable for an insider's
profit in violation of section 16(b) of the Securities Exchange Act of
1934, but the Court found that the payment was made to protect the
business reputation of the petitioner and to avoid delay in the issuance
of the proxy statement. In so holding, we relied on *William L.
Mitchell,* 52 T.C. 170 (1969), revd. 428 F. 2d 259 (C.A. 6, 1970),
certiorari denied 401 U.S. 909 (1971), and *James E. Anderson,* 56
T.C. 1370 (1971), then on appeal to the Seventh Circuit.

---

[1] All statutory references are to the Internal Revenue Code of 1954, except that any
reference to sec. 16(b) is to such section of the Securities Exchange Act of 1934.

1

Subsequently, our holding in *Anderson* was reversed. *Anderson* v. *Commissioner*, 480 F. 2d 1304 (C.A. 7, 1973). Based on such reversal, the respondent moved for reconsideration of the opinion and to vacate the decision in the case. On July 9, 1973, the respondent's motion to vacate decision was granted in order to stop the running of the period for appeal, and the parties were directed to submit legal memorandums in support of their positions with respect to reconsideration and revision of our opinion. Such memorandums have been filed.

In *James E. Anderson, supra,* we found that there was no connection between the two events—the taxpayer recognized capital gains in his capacity as a shareholder but paid the alleged insider's profit in his capacity as an officer. The Seventh Circuit found that reasoning unpersuasive. It concluded that at all times relevant, the taxpayer acted in one capacity—that of an insider. The court found that the sale and the subsequent payment were inextricably intertwined. Accordingly, under the doctrine of *Arrowsmith* v. *Commissioner*, 344 U.S. 6 (1952), the taxpayer was entitled only to a capital loss. Moreover, the court thought that to allow an ordinary deduction for the payment would frustrate the purpose of section 16(b), and in reliance upon *Tank Truck Rentals* v. *Commissioner*, 356 U.S. 30 (1958), it believed that the deduction should also be denied for that reason.

We have carefully reexamined our position in the light of the views expressed by the Seventh Circuit, but with due respect to that court, we are not convinced that our position should be changed. Since venue for appeal of this case is in the Second Circuit,[2] we are not required to follow the decisions of the circuit courts in *Anderson* v. *Commissioner, supra,* and *Mitchell* v. *Commissioner*, 428 F. 2d 259 (C.A. 6, 1970). *Jack E. Golsen*, 54 T.C. 742 (1970), affd. 445 F. 2d 985 (C.A. 10, 1971), certiorari denied 404 U.S. 940 (1971).

Simply stated, the doctrine set forth in *Arrowsmith* is that, without breaching the principle of the annual accounting period, the tax treatment of a transaction occurring in 1 year may control the tax treatment afforded a second transaction in a subsequent year where both transactions are integrally related. However, for *Arrowsmith* to apply, there must be a relationship between two transactions which is sufficient to require the conclusion that both transactions are parts of a unified whole. *James E. Anderson*, 56 T.C. at 1376. In *Arrowsmith*, the Court found such relationship in part because the payment there at issue would have been offset against the capital gain, had

---

[2] The petitioners maintained their residence in New York, N.Y., at the time of the filing of their petition in this case.

both transactions occurred in the same year. In *United States* v. *Skelly Oil Co.*, 394 U.S. 678 (1969), a sufficient relationship was found because the percentage depletion allowance would have been reduced, had the payment at issue been made in the year income was initially recognized under the claim of right.

In the present case, there was no such integral relationship between the sale of stock and the payment to MGM. Had Mr. Cummings made the payment to MGM in the same year as the sale and purchase, there would have been no reason to require that the payment be offset against the gain realized on the sale. When he sold his MGM stock, he sold a capital asset and realized a capital gain. The subsequent purchase of other MGM stock for a lower price does not, as a matter of tax law, provide a basis for reducing or offsetting the capital gain already realized. *William L. Mitchell*, 52 T.C. at 174.

Nor is the capital gain reduced by the payment to MGM. The Seventh Circuit in *Anderson* appears to have assumed that there was a violation of section 16(b) and that the payment was made in satisfaction of a liability resulting from such violation. However, in *Anderson*, and also in the case before us today, there has been no determination that the taxpayer violated section 16(b) or that he was liable under that section to make any payment. As we pointed out before, Mr. Cummings made the payment promptly after learning of the position taken by the Securities Exchange Commission (SEC); he acted without legal advice; and these circumstances indicate clearly that the payment was not made because of a recognition of a legal duty to do so. On the contrary, it is clear that the payment was made for business reasons and for reasons growing out of his responsibility as a director of MGM. He made the payment to protect his business reputation and to avoid a delay in the issuance of the MGM proxy statement. In *United States* v. *Generes*, 405 U.S. 93 (1972), the Supreme Court pointed out that when an individual, who is both a shareholder and an employee of a corporation, makes or guarantees a loan of the corporation, it is necessary to decide in which capacity he acted. In like manner, it is also necessary to decide whether, when Mr. Cummings made the payment to MGM, he was acting as a shareholder or as a director, and we remain convinced that it was as a director that he decided to make the payment to MGM.

In our opinion, *Tank Truck Rentals* v. *Commissioner*, *supra*, is not applicable in this case. In that case, the Court denied a deduction for fines paid as a result of the admitted violation of a State law, because allowance of the claimed deduction would have resulted in an immediate and severe frustration of public policy. Each case was to be decided on the basis of its own facts and circumstances (*Tank Truck*

*Rentals* v. *Commissioner*, 356 U.S. at 35; see also *Laurence M. Marks*, 27 T.C. 464, 469 (1956)), and the circumstances here are significantly different from those in *Tank Truck Rentals*. There has been no finding that Mr. Cummings violated the law by his sale and purchase of MGM stock; there was merely the indication by the SEC that he may have done so. This situation is similar to that in *Joseph P. Pike*, 44 T.C. 787, 798–799 (1965), in which we stated that *Tank Truck Rentals* is inapplicable when the payment at issue is not attributable to the violation of the State law but only to the allegation of a violation—in such circumstance, the payment cannot be considered a penalty.

Accordingly, in the circumstances of this case, we believe that the petitioner recognized capital gains as a shareholder, but made the payment to MGM in his capacity as a director. Had the payment been made in the same year as the gain was recognized, it would not have reduced the amount of such capital gain. Thus, *Arrowsmith* v. *Commissioner*, *supra*, has no applicability in this case.

The respondent's motion for reconsideration and revision of the opinion is hereby denied.

Reviewed by the Court.

*Decision will be entered for the petitioners.*

TANNENWALD, *J.*, did not participate in the consideration and disposition of this case.

---

DAWSON, *J.*, dissenting: I respectfully dissent for the reasons stated in my dissenting opinion in *James E. Anderson*, 56 T.C. at 1377–1379. I would follow the reversal of the *Anderson* case by the Court of Appeals for the Seventh Circuit, 480 F. 2d 1304 (C.A. 7, 1973). See also *Mitchell* v. *Commissioner*, 428 F. 2d 259 (C.A. 6, 1970), reversing 52 T.C. 170 (1969).

FEATHERSTON, QUEALY, GOFFE, and HALL, *JJ.*, agree with this dissent.

---

DRENNEN, *J.*, dissenting: I did not participate in this Court's consideration of, and decision in, *James E. Anderson*, 56 T.C. 1370, and hence feel less compunction about taking a position contrary to the position we took in *William L. Mitchell*, 52 T.C. 170, than some of my colleagues. I am inclined to agree with Judge Dawson in his dissenting opinion in *Anderson* that the Supreme Court in *United States* v. *Skelly Oil Co.*, 394 U.S. 678, meant that the Code should not be interpreted to permit the equivalent of a double deduction absent a clear declaration by Congress of such intent. I recognize that artful, technical arguments can be made that the Court had different circum-

stances and different deductions before it in *Skelly Oil* than we have here and, therefore, that case is not controlling here. But I believe that is more wishful thinking than practical analysis of the Court's opinion and that *Skelly Oil* should be considered controlling here. Such is the view taken by two Courts of Appeals in reversing this Court in *Mitchell* v. *Commissioner*, 428 F. 2d 256 (C.A. 6, 1970), and *Anderson* v. *Commissioner*, 480 F. 2d 1304 (C.A. 7, 1973).

While I realize that the proposal I am making is not before the Court in this case, and may never be urged by either a taxpayer or the Commissioner, because a tax benefit in the hand is worth two possible ones in the future, I am still of the view, suggested in my concurring opinion in *Mitchell*, that perhaps the best way to resolve the conflicting legal arguments and equities under circumstances such as here present would be to add the amount repaid because of the threat of section 16(b) of the Securities Exchange Act of 1934 to the basis of the stock purchased and presently held by the taxpayer. Surely the purchase in both the purchase-sale and the sale-purchase transactions is basically responsible for triggering the repayment because of the possible violation of section 16(b) and thus the repayment is tantamount to an additional cost of the purchased stock. This would deny the purported "insider" recognition of his repayment loss until he disposes of the stock, the purchase of which triggered the payment, and the gain or loss on such ultimate disposition will be characterized the same for tax purposes as the gain he realized and had recognized on the sale of his previously held stock.

I recognize that this proposal would not be applicable in circumstances such as those in *United States* v. *Skelly Oil Co.*, *supra*, and *Arrowsmith* v. *Commissioner*, 344 U.S. 6 (1952), where no purchase was involved, but that should not prevent it from being applied in circumstances in which it might provide the better solution.