CHARLES I. BROWN and KATHLEEN M. BROWN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brown v. Commissioner
Docket No. 8523-71.
United States Tax Court
T.C. Memo 1973-275; 1973 Tax Ct. Memo LEXIS 11; 32 T.C.M. (CCH) 1300; T.C.M. (RIA) 73275; December 17, 1973, Filed Stanley L. Drexler and Dale W. Haines, for the petitioners. Arthur B. Bleecher and Norman N. Picket, for the respondent. FORRESTER
MEMORANDUM FINDINGS OF FACT AND OPINION FORRESTER, Judge: Respondent determined a deficiency in petitioners' Federal income tax for 1968 in the amount of $263.03. The sole issue remaining for our decision is whether payments made by petitioner Charles I. Brown to his employer, pursuant to an alleged violation of section 16(b) 2 of the Securities Exchange Act of 1934, 15 U.S.C.A. sec. 78p(b) are deductible as an ordinary and necessary business expense or as a long-term capital loss. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Charles I. Brown (hereinafter *12 referred to as petitioner) and Kathleen M. Brown are husband and wife who, at the time they filed their petition herein, resided in Denver, Colorado. They filed their joint Federal income tax return for the year 1968 with the district director of internal revenue, Denver, Colorado.
Since July 1, 1959, petitioner has been employed by Western Nuclear, Inc. (Western), and has been its vice president and treasurer at all times material hereto. Petitioner did not at any time have a written employment contract with Western, but served at the pleasure of the board of directors of that corporation. At all times material to the instant case the common stock of Western was listed and actively traded on the American Stock Exchange. 3 Pursuant to three employee stock purchase agreements granted in prior years, petitioner purchased 16,000 shares of Western common stock in March of 1966 for a total purchase price of $57,569.50. Between January 6, 1966, and May 5, 1966, petitioner sold 3,000 shares of Western common stock for a total amount of $58,325. The stock which was sold was purchased in the market in 1959 and 1960, and held continuously until the sales in 1966. [1] In their 1966 *13 joint Federal income tax return, petitioners reported a long-term capital gain in the amount of $49,059.97 on the sale of those 3,000 shares of common stock of Western. Petitioner sold the 3,000 shares of Western to obtain the cash needed to exercise the employee stock purchase options, and the proceeds from the sale produced approximately the amount required to exercise these options. Though petitioner was vaguely aware in 1966 that section 16(b) of the Securities Exchange Act of 1934 prohibited the purchase and sale of a corporation's stock within a six-month period by its officers, he believed that the statute did not apply to the exercise of a restricted stock option. 4 On March 22, 1968, Isadore Blau, a Western shareholder, filed a complaint against petitioner and Western in the United States District Court for the Southern District of New York, to recover on behalf of Western "short-swing profits" pursuant *14 to section 16(b) of the Securities Exchange Act of 1934. When petitioner learned that this action had been instituted he consulted with James T. Moran, general counsel of Western, and George G. Gallantz, a New York attorney retained by Western. Both attorneys informed petitioner that they could not advise or represent him because they represented Western, and suggested that if he wished he should obtain independent counsel. Petitioner decided that it would be impossible to contest the suit and simultaneously continue his employment with Western. Accordingly, he paid Western the full amount of all recoverable damages in the sum of $37,795.52. Petitioner did not engage counsel nor did he file an answer to the complaint. The motivation for petitioner's decision not to contest the suit was his fear that litigation would cause adverse publicity and embarrassment to him and Western and would damge his business reputation. On July 17, 1968, the parties filed a stipulation with the district court seeking dismissal of the action because 5 Western had received payment in full of all recoverable "short-swing profits" from petitioner. The court approved the stipulation of dismissal *15 in a memorandum opinion filed September 4, 1968. In their joint 1968 Federal income tax return petitioners reported the payments to Western as a long-term capital loss. In an amended return, however, petitioners deducted the payments as an ordinary and necessary business expense and claimed a refund in the amount of $7,598. In his notice of deficiency, respondent disallowed the claimed refund. OPINION The issue for our decision is whether petitioner is entitled to deduct (as an ordinary and necessary business expense under section 162(a)) [2] payments which he made to Western, in settlement of an alleged violation of section 16(b) of the Securities Exchange Act of 1934. Prior to the proceedings in the instant case, we have considered this identical issue many times. In William L. Mitchell, 52 T.C. 170 (1969), we held that such payments were deductible as an ordinary and necessary business 6 expense if (1) the taxpayer was in the trade or business of being a corporate executive *16 and (2) made the payments to protect his employment and business reputation. Our decision in Mitchell was reversed by the Court of Appeals for the Sixth Circuit. 428 F.2d 259 (C.A. 6, 1970), certiorari denied 401 U.S. 909 (1971). In James E. Anderson, 56 T.C. 1370 (1971), we reconsidered this issue in light of the reversal of Mitchell by the Sixth Circuit, and respectfully affirmed the position we had taken in Mitchell. On brief in the instant case, respondent urged this Court to reconsider its opinions in Mitchell and Anderson and to adopt the holding of the Sixth Circuit which treated the 16(b) payments as a long-term capital loss rather than an ordinary and necessary business expense. Subsequent to the filing of briefs in the instant case, we have further considered this issue. In Nathan Cummings, 60 T.C. 91 (1973), this Court again held that payments made pursuant to an alleged violation of section 16(b) were deductible as an ordinary and necessary business expense. On June 14, 1973, the Seventh Circuit reversed our holding in Anderson (480 F.2d 1304 (C.A. 7, 1973)). Based on such 7 reversal, the respondent *17 moved that we reconsider our opinion in Cummings and vacate our decision in that case. Such motion was granted, and, in a Court reviewed decision, we once again affirmed our position. Nathan Cummings, 61 T.C. (Oct. 2, 1973). Respondent has presented no arguments to sustain his position other than those which we have rejected in the decisions of this Court mentioned above. In light of the thorough consideration which we have given the issue before us, we decline to adopt a different standard for determining the character of the claimed deduction from that which we espoused in Mitchell, Anderson and Cummings. Respondent does not challenge petitioner's assertion that he was in the trade or business of being a corporate executive. Thus, the only question we must resolve is whether petitioner made the 16(b) payments to protect his employment and business reputation. The facts in the instant case clearly establish that petitioner was so motivated in making the aforementioned payments. Petitioner did not engage counsel to determine the merits of the complaint filed against him, nor did he even file an answer to the complaint. His decision to make the 8 payments was based *18 on his belief that he could not continue to serve Western in a key managerial capacity and simultaneously defend the action against him. Petitioner also feared that litigation would cause adverse publicity to him and Western. We accordingly hold that petitioner's 16(b) payments are deductible as an ordinary and necessary business expense. Because of concessions, Decision will be entered under Rule 50. Footnotes
1. Though the parties have stipulated that all of these shares were purchased in 1959 and 1960, in their 1966 joint Federal income tax returns, petitioners stated that 2,000 ofthe shares were purchased in 1963. This disparity is not explained in the record. ↩
2. All statutory references are to the Internal Revenue Code of 1954, except that any reference to section 16(b) is to such section of the Securities Exchange Act of 1934. ↩