490 F.2d 203
 74-1 USTC P 9259
 George T. and Ruth A. KIMBELL, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
No. 73-3411 Summary Calendar.*
*Rule 18, 5th Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 Feb. 22, 1974.
 
 Harold D. Rogers, Wichita Falls, Tex., for plaintiffs-appellants.
 Scott P. Crampton, Asst. Atty. Gen., Tax Div., Meyer Rothwacks, Chief, App. Sec., Dept. of Justice, Washington, D.C., Frank D. McCown, U.S. Atty., Ft. Worth, Tex., William W. Guild, Atty., Tax Div., Dept. of Justice, Bennet N. Hollander, Dallas, Tex., Charles E. Anderson, Attys., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.
 Before COLEMAN, DYER and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 In this tax refund suit, the District Court upheld the determination of the Commissioner of Internal Revenue that $49,500 expended by the taxpayer was a capital loss and not a fully deductible business expense. We affirm.
 
 
 2
 In 1961, taxpayer sold his interest in two oil and gas leases and reported a long-term capital gain of $190,000 from the sale. In 1962, it was discovered that the wells on the two leases were illegally slanted and production was halted. A bank which had obtained a security interest in the leases from the buyer at the time of purchase then threatened a lawsuit against taxpayer. Taxpayer settled the claim based on fraud for $49,500 in 1967 and deducted the payment as an ordinary and necessary business expense. The Commissioner allowed the deduction only as a capital loss.
 
 
 3
 Taxpayer testified that he and his attorney were convinced that the bank's claim was entirely without merit but that nonetheless he agreed to settle because a lawsuit alleging illegal slant wells would have had a detrimental effect on his business reputation in the oil and gas industry. Taxpayer argues that the claim was settled to (1) protect taxpayer's business reputation since a lawsuit would result in unfavorable publicity, (2) save large attorney's fees and court costs, and (3) prevent the possibility of lawsuits by adjoining lease owners for drainage.
 
 
 4
 Taxpayer argues that this undisputed evidence requires a finding that the payments were made to protect a taxpayer's business or to avoid unfavorable commercial publicity and thus are ordinary business expenses under Helvering v. Community Bond & Mortgage Corp., 74 F.2d 727 (2d Cir. 1935); Paul Draper, 26 T.C. 201 (1956), and William L. Butler, 17 T.C. 675 (1951). In none of those cases, however, was the payment connected with a prior capital transaction from which a taxpayer derive dthe benefit of lower tax rates on capital gains.
 
 
 5
 We agree with the District Court that the principle in Arrowsmith v. Commissioner of Internal Revenue, 344 U.S. 6, 73 S.Ct. 71, 97 L.Ed. 6 (1952) is controlling. In Arrowsmith, two taxpayers liquidated their jointly owned corporation, reporting their profit on the transaction as capital gain. Subsequently, they, as transferees of the corporate assets, were required to pay a judgment rendered against the corporation. They sought to deduct the payments as business expenses. The Supreme Court held that payments to be a part of the original liquidation transaction, requiring classification as capital losses.
 
 
 6
 The taxpayer argues that Arrowsmith is distinguishable because the payments there were made against a legal liability existing prior to final liquidation and the Arrowsmith taxpayers did not make the payments to protect their business reputations.
 
 
 7
 There is no indication in Arrowsmith, however, that the claim's existence prior to liquidation was in any way controlling. The basic character of the transaction giving rise to the settlement payment would be the same whenever the legal claim was asserted. Taxpayer's subjective motivation for making a settlement payment is irrelevant to the determination of its deductibility. It is the origin and character of the claim against the taxpayer that controls the characterization of settlement expenses for federal tax purposes. Anchor Coupling Co. v. United States, 427 F.2d 429 (7th Cir. 1970), cert. denied, 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971); see United States v. Hilton Hotels Corp., 397 U.S. 580, 90 S.Ct. 1307, 25 L.Ed.2d 585 (1970); Woodward v. Commissioner of Internal Revenue, 397 U.S. 572, 90 S.Ct. 1302, 25 L.Ed.2d 577 (1970); United States v. Patrick, 372 U.S. 53, 83 S.Ct. 618, 9 L.Ed.2d 580 (1963); United States v. Gilmore, 372 U.S. 39, 83 S.Ct. 623, 9 L.Ed.2d 570 (1963).
 
 
 8
 Explaining the rationale in Arrowsmith, the Supreme Court later said 'if money was taxed at a special lower rate when received, the taxpayer would be accorded an unfair windfall if repayments were generally deductible from receipts taxable at the higher rate applicable to ordinary income.' United States v. Skelly Oil Co., 394 U.S. 678, 685, 89 S.Ct. 1379, 1383, 22 L.Ed.2d 642 (1969).
 
 
 9
 Taxpayer relies on five Tax Court opinions to establish the principle that a payment made to protect a taxpayer's business reputation and avoid unfavorable publicity is deductible as an ordinary and necessary business expense. Charles I. Brown, T.C. Memo 1973-275 (Dec. 17, 1973); Nathan Cummings, 60 T.C. 91 (1973), appeal docketed, No. T-3065, 2d Cir., Jan. 8, 1974; James E. Anderson, 56 T.C. 1370 (1971), rev'd, 480 F.2d 1304 (7th Cir. 1973); William L. Mitchell, 52 T.C. 170 (1969), rev'd, 428 F.2d 259 (6th Cir. 1970), cert. denied, 401 U.S. 909, 91 S.Ct. 848, 27 L.Ed.2d 807 (1971); Laurence M. Marks, 27 T.C. 464 (1956). Those cases involved the deductibility of corporate insiders' payments to their corporations of profits from short swing transactions in company stock, pursuant to section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. 78p(b). The Tax Court held that the insiders' obligation to make the payments derived from their status as insider employees covered by section 16(b) and not from the stock transactions. That Court noted that the short swing profits for which an insider is accountable-- the difference between the sale proceeds and the cost of purchasing replacement stock-- is unrelated to the amount of capital gain realized-- the excess of the sale proceeds over the cost of the stock sold. Thus, the Tax Court distinguished Arrowsmith and Skelly Oil on the ground that a section 16(b) payment is not directly and integrally related to the earlier capitalgains-producing sale.
 
 
 10
 Both the Sixth and Seventh Circuits have rejected the Tax Court's position. Anderson v. Commissioner of Internal Revenue, 480 F.2d 1304 (7th Cir. 1973); Mitchell v. Commissioner of Internal Revenue, 428 F.2d 259 (6th Cir. 1970), cert, denied, 401 U.S. 909, 91 S.Ct. 868, 27 L.Ed.2d 807 (1971). They applied the Arrowsmith principle on the ground that the liability of the taxpayers was predicated on sales resulting in capital gains. These Circuits characterized a section 16(b) payment to a corporation as representing a portion of the stock's sales price and as an adjustment on that price, which would ordinarily reduce the amount of capital gain. Despite the Mitchell and Anderson reversals, the Tax Court, in Cummings (now on appeal in the Second Circuit) and Brown, has expressly declined to adopt a different standard for determining the character of the deduction claimed in those cases. Comment on the merits of this dispute between the Courts of Appeal and the Tax Court is neither appropriate nor necessary to the resolution of this appeal.
 
 
 11
 Assuming arguendo the validity of the Tax Court position, the fair implication of that Court's opinions supports the application of the Arrowsmith principle to this case. The Tax Court recognizes that even a narrow interpretation of the Supreme Court's ruling would control a 'situation where the taxpayer, having received money in one capacity, was required in that same capacity to repay that money to the same person who made the payment.' James E. Anderson, supra, 56 T.C. at 1376. Here the taxpayer obtained the proceeds of the sale of his oil leases in his capacity as their seller. The claim that he deemed expedient to settle was asserted against him because he was the seller. The settlement payment was delivered to the nominee of the bank which had succeeded to the interest of the purchaser. Thus, taxpayer fails even under a narrow interpretation of Arrowsmith.
 
 
 12
 In short, we hold that a payment made by a taxpayer in satisfaction of a liability arising from an earlier transaction, on which that taxpayer reported capital gain, must be treated as a capital loss at least to the amount of the capital gain, regardless of the taxpayer's motivation for making the payment.
 
 
 13
 Affirmed.