JAMES O. GOULD AND BETTY L. GOULD, PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1552-73.    Filed May 1, 1975.

*Bernard L. McAra,* for the petitioners.
*Virginia M. Tomasulo,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined the following deficiencies in the petitioners' Federal income taxes:

| Year | Deficiency |
| --- | --- |
| 1965 | $1,912.04 |
| 1968 | 3,143.48 |

The only issue for decision is whether certain payments which Mr. Gould made to creditors of his wholly owned corporation were, in effect, contributions to the capital of that corporation or were made to preserve his employment with another corporation.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, James O. Gould and Betty L. Gould, husband and wife, had their legal residence at Davisburg, Mich., at the time of filing their petition herein. They filed joint Federal income tax returns with the District Director of Internal Revenue, Detroit, Mich., for the year 1965, and with the Internal Revenue Service Center, Cincinnati, Ohio, for the year 1968.

On May 1, 1966, Mr. Gould incorporated Gould Plumbing & Heating, Inc. (GPH), to perform residential plumbing and heating services. Mr. Gould owned all of its capital stock of $1,000, and he was the president and an employee of the corporation.

In the latter part of 1966, Industrial Mechanical Contractors, Inc. (IMC), was incorporated. Mr. Gould invested $2,500 for a 25-percent interest in IMC. IMC was engaged in performing industrial plumbing and heating services of a specialized nature. In order to obtain jobs, it had to have its name included on a list of contractors who would be invited to submit bids on work projects. Mr. Gould was a director of IMC at its inception, and he

became a part-time employee in the latter part of 1967. In 1968, he was employed full time at IMC as its secretary and purchasing agent. As the purchasing agent, he had direct contact with the manufacturers who supplied the materials, and he contracted for materials for IMC's jobs. At IMC, Mr. Gould dealt with companies that also did business with GPH.

Mr. Gould reported compensation from GPH and IMC on his Federal income tax returns as follows:

| Year | GPH | IMC |
|------|------|------|
| 1966 | $7,200 | 0 |
| 1967 | 15,550 | $600 |
| 1968 | 9,400 | 11,750 |
| 1969 | 0 | 20,280 |

During the latter part of 1967 and continuing through 1968, GPH was experiencing financial difficulties. By April 30, 1968, its balance sheet reflected a deficit of $21,298. When Mr. Gould was apprised of GPH's financial condition, he caused GPH to cease operating, since he had neither the time nor the money to effect a change in its condition. As the year progressed, GPH's creditors grew increasingly concerned over its ability to make payments on debts due them. Eventually, in the fall of 1968, one of those creditors garnisheed the bank account and accounts receivable of GPH. Some of those accounts receivable were owed by persons who also dealt with IMC.

IMC's directors considered that GPH's financial plight might adversely affect IMC as a result of its association with Mr. Gould. In 1961, Mr. Gould was associated with a corporation which had become bankrupt, and such fact was noted on IMC's Dun and Bradstreet report. Some of IMC's suppliers and customers had commented on the bankruptcy, and there was some reluctance to include IMC on bid lists, even though IMC's creditors looked only to IMC for payment of its debts. IMC's directors were concerned that if another corporation of Mr. Gould's became bankrupt, the danger of injury to IMC's financial standing would be increased. The risk of IMC being removed from the bid list would be enhanced, and they felt that it would be untenable for IMC to have Mr. Gould as its purchasing agent dealing with creditors with whom, in another business, he was entering bankruptcy proceedings. IMC's directors treated the problem as a crucial matter although none of its suppliers or creditors altered

or threatened to alter their dealings with IMC. IMC experienced no change in its credit rating during 1968.

The IMC directors repeatedly and strongly impressed upon Mr. Gould the importance of working out some arrangement satisfactory to GPH's creditors. Mr. Gould believed that he would have to settle GPH's affairs satisfactorily or his employment with IMC would be terminated, although none of the other directors explicitly stated that his job was in jeopardy. On November 14, 1968, Mr. Gould and four of GPH's creditors reached a compromise. It was agreed that GPH's obligations of $39,600 were to be settled by Mr. Gould's payment of $30,960, although he was not personally liable for those obligations. After the compromise was reached, GPH became dormant: its only functions consisting of collecting receivables, selling its assets, and making payments on its outstanding liabilities. The balance sheets of GPH reflected deficits of $43,176 and $60,191 for its fiscal years 1969 and 1970, respectively.

On their Federal income tax return for the year 1968, the petitioners deducted the payments Mr. Gould made to GPH's creditors as business expenses, thus showing a net operating loss for that year. The petitioners also filed an application for a tentative carryback adjustment claiming a refund of taxes for the year 1965, which was allowed. In his notice of deficiency, the Commissioner determined that the payments constituted a contribution to capital, that there was no net operating loss in 1968, and that there was no loss carryback to 1965.

OPINION

The only issue to be decided is whether Mr. Gould's payments to the creditors of GPH were deductible under section 162(a) of the Internal Revenue Code of 1954.[1] That section provides in part:

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

Ordinarily, a shareholder may not deduct a payment made on behalf of the corporation, but must treat it as a capital expenditure. *Deputy v. DuPont*, 308 U.S. 488 (1940); *Bert B. Rand*, 35 T.C. 956 (1961). However, such rule is not invariable;

---

[1] All statutory references are to the Internal Revenue Code of 1954.

the payment may be deducted if it is an ordinary and necessary expense of a trade or business of the shareholder. *James L. Lohrke*, 48 T.C. 679 (1967). During 1968, Mr. Gould was an employee of IMC, in addition to being the sole shareholder of GPH. His employment with IMC constituted a business, and he is entitled to deduct expenditures that have the requisite relationship to such employment. *Fischer v. United States*, 490 F. 2d 218 (7th Cir. 1973); *Noland v. Commissioner*, 269 F. 2d 108 (4th Cir. 1959), affg. a Memorandum Opinion of this Court, cert. denied 361 U.S. 885 (1959); *Nathan Cummings*, 60 T.C. 91 (1973), supplemental opinion 61 T.C. 1 (1973), revd. on another issue 506 F. 2d 449 (2d Cir. 1974), cert. denied 421 U.S. 913 (1975).

We are satisfied that Mr. Gould paid the debts of GPH because of his fear that his failure to clear up the imbroglio might jeopardize his position with IMC. Throughout 1968, even after learning of GPH's financial straits and knowing about the concern of the GPH creditors, Mr. Gould did nothing to remedy the situation until the other directors of IMC told him that they were apprehensive about the impact of the GPH situation on IMC. Mr. Gould's involvement with an earlier bankrupt business had generated some reluctance among IMC's customers to include it on the bid list. His involvement with a second bankruptcy would enhance the chances of IMC's suppliers and customers to cease dealing with IMC or to restrict the amount of credit hitherto given to IMC. The other directors insisted that the situation would be untenable for Mr. Gould to continue as the purchasing agent for IMC, thus dealing with creditors who were familiar with the impending bankruptcy of GPH or with creditors of IMC whose claims against GPH were likely to become uncollectible. It was only after such insistence that Mr. Gould effected a compromise with some of the creditors of GPH.

As the person responsible for endangering IMC's credit standing, Mr. Gould's employment was threatened. Accordingly, Mr. Gould attempted to protect his position with IMC by eliminating the cause of its potential problems. *Oddee Smith*, 60 T.C. 316 (1973); *Samuel R. Milbank*, 51 T.C. 805 (1969); *C. Doris H. Pepper*, 36 T.C. 886 (1961). The evidence is clear that his motive was to preserve his employment at IMC. *Nathan Cummings, supra; James L. Lohrke, supra;* see *United States v.*

*Generes,* 405 U.S. 93 (1972). He was not primarily concerned about his personal reputation when he paid the GPH creditors.

It is clear that Mr. Gould did not make the payments to revitalize GPH or to enhance the value of his investment in IMC. *Jean U. Koree,* 40 T.C. 961 (1963). GPH was defunct in 1968: it had ceased conducting any new business, and its only activities were restricted to terminating its operations. During its fiscal years 1968 through 1970, GPH's deficit increased from $21,298 to $60,191. Mr. Gould's income from GPH steadily decreased from 1967 to 1969, when it ceased; whereas, over the same period, Mr. Gould's income from IMC significantly increased. Such facts show that Mr. Gould did not expect reimbursement through GPH, but through continued receipt of earnings from his employment at IMC. *Oddee Smith, supra;* compare *I. Hal Millsap, Jr.,* 46 T.C. 751 (1966), affd. 387 F. 2d 420 (8th Cir. 1968); *Wilfred J. Funk,* 35 T.C. 42 (1960).

Although IMC's other directors did not threaten to fire Mr. Gould unless he satisfied the creditors of GPH, he believed his position with IMC was in jeopardy. The Commissioner argued that the payments by Mr. Gould were deductible only if he would have lost his job had the payments not been made. However, the petitioner is only required to carry his burden of proving that his motive for making the payments was to protect his job with IMC, and we are satisfied that he has carried that burden. *James E. Anderson,* 56 T.C. 1370 (1971), revd. on another issue 480 F. 2d 1304 (7th Cir. 1973); *Samuel R. Milbank, supra;* see *James L. Lohrke, supra.*

The Commissioner also argued that Mr. Gould's payments were not "ordinary" expenses of his employment with IMC and thus fail to qualify under section 162(a). In *James L. Lohrke, supra,* and *Samuel R. Milbank, supra,* the taxpayers paid certain obligations of their respective corporations to make possible the continuing operation of other businesses. In both cases, the Court held that the payments were proximately related to the other businesses and deductible under section 162(a). The facts of this case are no different in essence from such cases and amply justify the conclusion that Mr. Gould's payments were proximately related to his business as an employee of IMC. The payments

were made to protect his status as an employee of IMC, and their only result was to preserve that status.

*Decision will be entered for the petitioners.*